Celeste Lloyd **MEEKS** & Lawrence Hugh **McCullough**, Appellants,

v.

The **STATE** of Texas, Appellee.

Nos. 61653, 61654.

Court of Criminal Appeals of Texas, En Banc.

June 26, 1985.

Gerald H. Goldstein, Mark Stevens, San Antonio, Martin Underwood, Comstock, Edward A. Mallett, Houston, for appellants.

Thomas F. Lee, Dist. Atty., Del Rio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

These are appeals from convictions for possession of more than four ounces of marihuana, where the punishment was assessed by the jury at five years' imprisonment for each appellant.

On appeal appellants contend the court erred in overruling their motion to suppress the alleged marihuana and in later admitting such evidence on the ground that the "license check" statute (Article 6687b, § 13, V.A.C.S.) was used as pretext to justify a "roadblock" manned by various federal, state and local peace officers to enforce criminal laws generally, thus violating appellants' rights to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 9 of the Texas Constitution. Appellant McCullough also contends the evidence is insufficient to support his conviction for possession of marihuana noting he was only a passenger in the car under the control of another.

The record reflects that the seizure and search in question occurred on November 3, 1977, at a roadblock established on U.S. Highway No. 90, one mile west of Sanderson by various law enforcement officers. All traffic going east or west was stopped.

Traffic cones placed on the highway narrowed the lane so that the vehicles could be forced to the shoulder of the road and stopped. Flashing lights were also utilized.

Sheriff Dalton Hogg, Terrell County Sheriff, testified at the suppression hearing that this type of roadblock was conducted two or three times a year, and there had been approximately seven roadblocks prior to November 3, 1977. They were coordinated to be convenient for each of the state and federal agencies who decided as a "group" on a time. Sheriff Hogg could not remember who initiated the idea for the November 3rd roadblock, but he was its "coordinating officer." The record shows that at the roadblock there were Texas Department of Public Safety officers including Highway Patrol officers, Narcotics officers from Laredo (200 to 300 miles away) and License and Weight Division officers. There were deputy sheriffs from Terrell and Brewster Counties, "Auto Theft" officers from Del Rio, Parks and Wildlife officers (Game Wardens), Alcoholic Beverage Commission officers from Pecos, and from time to time federal Border Patrol officers. One officer testified there were 20 officers present, another said 15, and Sheriff Hogg stated at least 12 officers were present. Most of the officers were in uniform and visibly armed. There were estimates of seven to nine law enforcement vehicles, most of which were marked police vehicles. There was some testimony the roadblock was in existence for 24 hours, but there was other testimony it commenced at 1:30 p.m. on November 3, 1977 and ended at 6 a.m. the next day. One officer estimated 200 vehicles were stopped within a 12 hour period.

Sheriff Hogg testified the officers were there to "enforce all the laws." They were working together on "anything that would be a violation of some type." The alcoholic beverage officers would enforce the alcohol laws, the narcotic officers, the narcotic laws, the game wardens, the parks and wildlife laws, etc.

D.P.S. Officer Donald Ray Tucker stated they were there checking driver's licenses, equipment, overweight vehicles, checking for stolen vehicles, any felony violation that came to their attention as well as fugitives. Acknowledging he was a narcotic officer stationed in Laredo, he stated they were also looking for controlled substance violations.

Doyle Holdridge, another D.P.S. officer stationed in Laredo, testified initially they had come to the roadblock several hundred miles away to check driver's licenses. He then stated it was for "enforcement of any laws that's violated," including "DWIs, stolen cars, you know, apprehension of felons, wanted people, *just anything that comes around*." (Emphasis supplied). He acknowledged he didn't give any traffic tickets, that such cases were turned over to local troopers as they were 300 miles from their base and didn't want to return 300 miles to check on "an old driver's ticket, the disposition on it." The record also reflects:

"Q. All right. But they send you there with a number of other officers to enforce a lot of different laws.

"A. Yes, sir.

"Q. Not just to check licenses?

"A. I don't understand the question.

"Q. Well, they don't ask narcotic officers and Highway Patrolmen and Parks and Wildlife Department people all just to check licenses, they were there enforcing various laws that these officers are charged with enforcing in the State of Texas.

"A. Yes, sir.

"Q. And all these people weren't sent there just 300 miles from Pecos, Laredo and all parts in between just to look at driver's licenses?

"A. That's correct."

The roadblock commenced about 1:30 p.m. on November 3, 1977. About 1:45 p.m. the third or fourth car stopped by the officers was a 1972 Plymouth automobile being driven east. It contained the appel-

lants. The officers acknowledged they had no prior information about the car or its occupants. They observed no traffic violations or any other violation of the law or any suspicious conduct. They had no articulable and reasonable suspicion that the driver was unlicensed or that the vehicle was not registered. Appellant Celeste Meeks was driving the Plymouth, and appellant McCullough was a passenger. D.P.S. narcotic officer Tucker, not in uniform, but visibly armed and wearing a badge, asked Meeks for a driver's license, and she produced one from Georgia. Tucker observed a spare tire, bumper jack, luggage and articles of clothing in the back seat of the vehicle. As Meeks rolled down the car window, Tucker smelled a slight odor of marihuana (non-burning) but "nothing very definite." Tucker observed the passenger, McCullough, was extremely nervous, with a rapid heart beat visible through his tight shirt. Tucker then observed the vehicle was equipped with air shocks on the rear which are normally used for heavy loads. As he went down to inspect them, the odor of marihuana was strong. He also noticed at this time the vehicle bore a Georgia license plate at the rear of the car. Tucker then asked Meeks what was in the trunk, and she replied "junk." Tucker testified she agreed when he asked if he could look in the trunk. She got out of the car and went to the rear of the car. After Tucker's second request, she handed him the car keys. The trunk was opened and approximately 437.8 pounds of marihuana was found. During this time McCullough had been removed from the vehicle by other officers.

Neither appellant testified at the hearings on the motion to suppress. The motions were overruled. At the joint trial on the merits, the State offered much the same evidence along with that of the chemist that the substance seized was marihuana. The appellants again did not testify. The jury found the appellants guilty and assessed punishment at five years for each.

■ The State relies upon Article 6687b, § 13, V.A.C.S., to justify the initial stop. It reads in pertinent part:

"... any peace officer may stop and detain any motor vehicle operator for the purpose of determining whether such person has a driver's license as required by this section."

The continued viability of this statute is in question in light of the decision of the United States Supreme Court in *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), where the Court stated:

"[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or either the vehicle or an occupant is otherwise subject to seizure for violation of the law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment."

In *Luckett v. State*, 586 S.W.2d 524 (Tex. Cr.App.1979), and *McMillan v. State*, 609 S.W.2d 784 (Tex.Cr.App.1981), this Court held *Prouse* would not be given retroactive application or effect. Thus once these alleged offenses occurred and were tried before the date of the *Prouse* decision we need not decide whether Article 6687b, § 13, V.A.C.S., violates the prohibitions of the Fourth Amendment and Article I, § 9, Texas Constitution, against unreasonable searches and seizures.

Nonetheless, the stop in the instant case was not justified as a check on the driver's license of the appellant Meeks. The Court has upheld the validity of stops under Article 6687b, § 13, where the stop was made for the *sole* purpose of determining whether the driver had a valid driver's license and to determine the fitness of the driver and vehicle. *Oliver v. State*, 455 S.W.2d 291 (Tex.Cr.App.1970); *Black v. State*, 491 S.W.2d 428 (Tex.Cr.App.1973); *Leonard v. State*, 496 S.W.2d 576 (Tex.Cr.App.1973); *Tardiff v. State*, 548 S.W.2d 380 (Tex.Cr. App.1977); *Faulkner v. State*, 549 S.W.2d 1 (Tex.Cr.App.1977); *Dillard v. State*, 550 S.W.2d 45 (Tex.Cr.App.1977); *Fatemi v. State*, 558 S.W.2d 463 (Tex.Cr.App.1977); *White v. State*, 574 S.W.2d 546 (Tex.Cr.

App.1979); *Razo v. State*, 577 S.W.2d 709 (Tex.Cr.App.1979); *Luckett v. State*, supra; *McMillan v. State*, supra. If a license check is not the sole reason for a detention, that detention is not authorized by the statute and cannot be upheld. *Fatemi v. State*, supra.

■ While the statute purports to give peace officers the right to stop and detain motorists for the limited purpose of checking their driver's or operator's licenses, it does not authorize fishing expeditions. *Faulkner v. State*, supra. A driver's license check may not be used as a subterfuge to cover up an unlawful stop based on mere suspicion unsupported by articulable facts necessary for an investigative detention. *White v. State*, supra; *McMillan v. State*, supra. See also *Hall v. State*, 488 S.W.2d 788, 790 (Tex.Cr.App.1973); *Pruitt v. State*, 389 S.W.2d 475, 476 (Tex.Cr.App. 1965). The mere asking for a driver's license will not validate the stopping of an automobile if it is clear the driver's license check was not the reason for detention. See *Hall v. State*, supra; *Faulkner v. State*, supra; *Fatemi v. State*, supra; *Razo v. State*, supra.

In the instant case the sole purpose in stopping all traffic on the highway in question was not to check driver's licenses as clearly indicated by the officers' testimony. It was to "enforce all the laws," "work on anything that would be a violation of some type." The fact that Officer Tucker first asked appellant Meeks for a driver's license does not convert the roadblock into a mere check for driver's licenses. The detention of the appellants was not authorized. The State's reliance upon Article 6687b, § 13, supra, is misplaced.

The State contends that even if the initial detention was illegal that appellant Meeks, the driver, consented to the search which resulted in the finding of the marihuana.

■ The basic purpose of the Fourth Amendment, United States Constitution, is to safeguard the privacy and security of individuals against arbitrary invasion by governmental officials. See *Bergen v. New*

*York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *Haynes v. State,* 475 S.W.2d 739 (Tex.Cr.App.1971). The same is true of Article I, § 9 of the Texas Constitution. *Kolb v. State,* 532 S.W.2d 87 (Tex.Cr.App. 1976). The protections afforded by these constitutional guarantees against unreasonable searches and seizures may be waived. *Kolb v. State,* supra. One of the specifically established exceptions to the requirements of both a warrant or probable cause, etc., is a search that is conducted pursuant to consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Allen v. State,* 487 S.W.2d 120 (Tex.Cr.App.1972); *DeVoyle v. State,* 471 S.W.2d 77 (Tex.Cr.App.1971).

■ It is well settled that before the consent to search is deemed effective the prosecution must prove by clear and convincing evidence that the consent was freely and voluntarily given. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); *Paprskar v. State,* 484 S.W.2d 731, 737 (Tex.Cr. App.1972).[1] *Kolb v. State,* supra. *Rumbaugh v. State,* 629 S.W.2d 747 (Tex.Cr. App.1982). The burden requires the prosecution to show the consent given was positive and unequivocal and there must not be duress or coercion, actual or implied. *Allen v. State,* supra; *Kolb v. State,* supra. See also 51 Tex.Jur.2d, Rev. Part I, Searches and Seizures, § 42, p. 722; *Evans v. State,* 530 S.W.2d 932 (Tex.Cr.App.1975).

■ The fact that a person is under arrest does not, in and of itself, prevent a free and voluntary consent from being given. *Paprskar v. State,* supra at p. 738; *Brown v. State,* 443 S.W.2d 261 (Tex.Cr. App.1969); 51 Tex.Jur.2d, Rev. Part I, Searches and Seizures, § 42, p. 725. It (custody) is merely one of the factors to be considered. *Nastu v. State,* 589 S.W.2d 434 (Tex.Cr.App.1979), cert. den. 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862.

■ The prosecution's burden, however, cannot be discharged by showing no more than acquiescence to a claim of lawful authority. *Bumper v. North Carolina,* supra; *Amos v. United States,* 255 U.S. 313, 317, 41 S.Ct. 266, 265, 65 L.Ed. 654 (1921); *Paprskar v. State,* supra; *Kolb v. State,* supra; *Ferguson v. State,* 573 S.W.2d 516 (Tex.Cr.App.1978); *Paulus v. State,* 633 S.W.2d 827 (Tex.Cr.App.1981). The consent to search is invalid if granted only in submission to a claim of lawful authority. *Amos v. United States,* supra; *Green v. State,* 594 S.W.2d 72 (Tex.Cr.App. 1980).

"Consent to search is not to be lightly inferred. It should be shown by clear and convincing evidence, and any consent must be voluntary and neither physically nor psychologically coerced, ..." 51 Tex.Jur.2d, Rev. Part I, Searches and Seizures, § 42, p. 722; *Green v. State,* supra.

In *Luera v. State,* 561 S.W.2d 497 (Tex. Cr.App.1978), this Court stated:

"The question raised is whether the marihuana was lawfully seized. If the officer's *initial detention* was reasonably justified, the search of the automobile was proper, since probable cause existed when the odor of marihuana was discovered. See *Duff v. State,* 546 S.W.2d 283 (Tex.Cr.App.1976); *Tardiff v. State,* 548 S.W.2d 380 (Tex.Cr.App.1977); *Drago v. State,* 553 S.W.2d 375 (Tex.Cr. App.1977). If the detention was unjustified, then the odor of marihuana would not have been detected; thus, the validity of the search would be tainted. See *Leighton v. State,* 544 S.W.2d 394 (Tex. Cr.App.1976); *Amorella v. State,* 554 S.W.2d 700 (Tex.Cr.App.1977); *Scott v. State,* 549 S.W.2d 170 (Tex.Cr.App.1976). The detention, if unlawful, may also have tainted appellant's apparent voluntary consent to search the trunk. See *Armstrong v. State,* 550 S.W.2d 25 (Tex.Cr. App.1976); *Truitt v. State,* 505 S.W.2d 594 (Tex.Cr.App.1973); *Evans v. State,* 530 S.W.2d 932 (Tex.Cr.App.1975); *McDougald v. State,* 547 S.W.2d 40 (Tex. Cr.App.1977)."

---

**1.** See footnote #2 of *Kolb* at p. 89.

**510**

■ The question of whether a consent to search was "voluntary" is a question of fact to be determined from the totality of all the circumstances. *Schneckloth v. Bustamonte,* supra; *Kolb v. State,* supra; *Doescher v. State,* 578 S.W.2d 385 (Tex.Cr. App.1978); *Rumbaugh v. State,* 629 S.W.2d 747, 749 (Tex.Cr.App.1982); *Fancher v. State,* 659 S.W.2d 836 (Tex.Cr.App. 1983).

■ In the instant case the appellant Meeks was forced to stop her vehicle at a roadblock by officers using flashing lights and traffic cones. There was in the immediate area 15 to 20 police officers and a number of marked police vehicles. The detention, as already observed, was illegal. Meeks' vehicle was approached by three armed officers. Officer Tucker asked for her driver's license. As a result of the illegal detention, the officer was able to smell a slight odor of marihuana when Meeks rolled down her window. He then began to examine the rear of the vehicle. When Meeks told him there was "junk" in the trunk in response to his questioning, he asked if he could open the trunk. It was his testimony she agreed. She got out of the vehicle and went to the rear. Tucker described her as very nervous. Tucker repeated his request a second time, and then Meeks handed the car keys to him. It was only after the discovery of the marihuana in the trunk that *Miranda* warnings [2] were given to Meeks. While a warning that an individual does not have to consent to a search and has the right to refuse is not required nor essential, the showing of a warning is of evidentiary value in determining whether a valid consent was given. *Allen v. State,* supra; *Cole v. State,* 484 S.W.2d 779 (Tex.Cr.App.1972); *DeVoyle v. State,* supra; *Potts v. State,* 500 S.W.2d 523, 526 (Tex.Cr.App.1973). Likewise, the lack of any warning, though not required, is also probative on the issue of consent.

■ We hold from a totality of the circumstances that appellant Meeks did not voluntarily consent to the search, and that the trial court erred in overruling her motion to suppress.

■ As to the appellant McCullough, we observe that in light of *United States v. Saluucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), and *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), a passenger in a vehicle does not have a legitimate expectation of privacy in the trunk of the vehicle where the passenger fails to assert a possessory interest in the vehicle or the property seized. As such appellant McCullough lacks standing to contest the search of the trunk of Meeks' vehicle.[3] See *Rodriquez v. State,* 617 S.W.2d 693 (Tex. Cr.App.1981); *Galvan v. State,* 598 S.W.2d 624 (Tex.Cr.App.1979); *Johnson v. State,* 583 S.W.2d 399 (Tex.Cr.App.1979); *Smith v. State,* 530 S.W.2d 827 (Tex.Cr.App.1975). The trial court did not err in overruling the motion to suppress as to the appellant McCullough.

■ In his second ground of error appellant McCullough contends the evidence is insufficient to sustain his conviction for possession of marihuana. He contends he was merely a passenger in the vehicle belonging to appellant Meeks.

Appellant notes that no marihuana was found on his person, he was not shown to be under the influence of marihuana or other drugs, that he made no furtive gestures to the contraband, made no incriminating statements and did not attempt to escape. It was not shown what his connection with Meeks was or how long he had been in the vehicle.

The State acknowledges that mere presence alone at a place where narcotics are possessed does not justify a finding of joint possession. *Ayers v. State,* 570 S.W.2d 926

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** It was undisputed that Meeks was driving and in control and possession of the vehicle. She

asserted ownership. It was revealed that she had purchased the vehicle in Georgia although the title had not been transferred on the date of the alleged offense.

(Tex.Cr.App.1918). However, the State urges there was sufficient evidence to affirmatively link the appellant to the marihuana in such a manner and to such an extent that a reasonable inference may arise that appellant knew of the marihuana's existence and of its whereabouts. *Ambercrombie v. State,* 528 S.W.2d 578 (Tex.Cr.App.1974); *Hernandez v. State,* 538 S.W.2d 127 (Tex.Cr.App.1976).

The State calls attention to the officers' testimony the smell of marihuana was "real" strong in and round the automobile, that there was a spare tire, bumper jack, blankets, luggage and articles of clothing lying in the back seat, and that the back seat is not the normal place to carry a spare tire and jack. The State notes that appellant McCullough was nervous, with a rapid heart beat, breathing heavily and appeared to be excited and trembling. He was shown to be from Georgia, traveling in an automobile with a Georgia license plate in West Texas near the Mexican Border when the trunk was found to contain marihuana. All of this evidence the State contends is sufficient to sustain his conviction.

Appellant McCullough counters with the facts that trained police officers could smell marihuana is no evidence that he could do so. *Reyes v. State,* 575 S.W.2d 38 (Tex.Cr.App.1979); that the items in the back seat raise no inference of his knowledge as to the marihuana; that nervousness is not an inappropriate response to the action of the officers and does not affirmatively link him to the marihuana. *Pace v. Beto,* 469 F.2d 1389, 1390 (5th Cir.1972); *Kaser v. State,* 505 S.W.2d 806 (Tex.Cr.App.1974); that the fact he was from Georgia riding as a passenger in a car with a Georgia license plate is without significance as showing he had knowledge of and control of the contraband.

The facts of the instant case are somewhat similar to *Reyes v. State,* 575 S.W.2d 38 (Tex.Cr.App.1979); wherein this Court stated:

> "It is well settled that an accused may with another or others jointly possess dangerous drugs or narcotics and that

such possession need not be exclusive. *Martinez v. State,* 539 S.W.2d 885 (Tex.Cr.App.1976); *Woods v. State,* 533 S.W.2d 16 (Tex.Cr.App.1976); *Curtis v. State,* 519 S.W.2d 883 (Tex.Cr.App.1975). However, mere presence alone at a place where narcotics or dangerous drugs are being used or possessed by others does not justify a finding of joint possession. *Underwood v. State,* 571 S.W.2d 7 (Tex.Cr.App.1978); *Ayers v. State,* 570 S.W.2d 926 (Tex.Cr.App.1978); *Harrison v. State,* 555 S.W.2d 736 (Tex.Cr.App.1977). The crux of this rule was perhaps best summarized in *Wilkes v. State,* 572 S.W.2d 538 (Tex.Cr.App.1978):

> " 'It has been consistently held in this state that possession means more than just being where the action is; the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew the matter possessed was contraband ... Therefore, there must be additional independent facts and circumstances which affirmatively link the accused to the contraband in such a manner that it can be concluded he had knowledge of the contraband as well as control over it....'

"In the case at bar, the State bases its claim that the appellant jointly possessed the marihuana on two contentions. First, it is advanced that the statement, 'We got caught,' alleged by Perez on cross-examination to have been made by Montoya while on the telephone at the sheriff's office, is sufficient to affirmatively link the appellant to the contraband. We cannot agree. Not only is the alleged statement extremely vague, it is hearsay of the rankest sort. We have consistently held that such evidence is without probative value in determining the sufficiency of the evidence. *Adams v. State,* 552 S.W.2d 812 (Tex.Cr.App.1977); *Hanna v. State,* 546 S.W.2d 318 (Tex.Cr.App.1977); *Mendoza v. State,* 522 S.W.2d 898 (Tex.Cr.App.1975).

**512**

"The State next urges the court to consider the close proximity of the appellant to the contraband, claiming that since there was no partition between the passenger compartment and the rear of the vehicle where the substance was found the appellant must necessarily have been aware of its existence. While Deputy Perez may have acquired the skill of detecting the odor of marihuana through his narcotic investigations, it was not shown that the appellant knew the smell of marihuana and such expertise may not be presumed. *Armstrong v. State,* 542 S.W.2d 119 (Tex.Cr.App. 1976). Moreover, the evidence revealed that the plastic bags containing the substance were covered by a tarp and that one of them had to be torn to determine its contents. Therefore, the deputy's expertise in recognizing the appearance as well as the odor of marihuana cannot be imputed to this appellant.

"We conclude that the evidence is insufficient to affirmatively link the appellant to the contraband seized. There is no showing that the Trail Duster was his vehicle, nor was there any attempt to connect him with the owner. Moreover, there is no evidence of furtive gestures toward the contraband, no attempt to escape, no evidence of marihuana smoke, no evidence that the appellant was under the influence of marihuana or other drugs, and no incriminating statements at the time of the arrest."

Also see *Johnson v. State,* 625 S.W.2d 330 (Tex.Cr.App.1981); *Sinor v. State,* 612 S.W.2d 591 (Tex.Cr.App.1981); *Naquin v. State,* 607 S.W.2d 583 (Tex.Cr.App.1980); *Heltcel v. State,* 583 S.W.2d 791 (Tex.Cr. App.1979).

We cannot conclude that a rational trier of the facts could have found the essential elements of the alleged crime beyond a reasonable doubt. *Carlsen v. State,* 654 S.W.2d 444, 448 (Tex.Cr.App.1983) (Opinion on Rehearing). That conclusion necessitates that this case be reversed with instruction that an acquittal be entered as to the appellant McCullough. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57

L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Reyes v. State,* supra.

Thus, the judgment of conviction against appellant McCullough is reversed and an acquittal ordered. The judgment of conviction against appellant Meeks, for the reasons earlier stated, is reversed and remanded to the trial court.