COURT
OF APPEALS

 

               THIRTEENTH
DISTRICT OF TEXAS

 

                  CORPUS
CHRISTI - EDINBURG

___________________________________________________________________

 

                             NUMBER
13-03-518-CR

 

THE STATE OF TEXAS,                                             Appellant,

 

                                           v.

 

STEPHANY JANE TIDWELL,                                        Appellee.

___________________________________________________________________

 

                             NUMBER
13-03-519-CR

 

THE STATE OF TEXAS,                                             Appellant,

 

                                           v.

 

RAMIRO BETANCOURT,                                             Appellee.

___________________________________________________________________

 

                  On
appeal from the 404th District Court

                          of
Cameron County, Texas.

__________________________________________________________________

 

                     MEMORANDUM
OPINION

 

                    Before
Justices Rodriguez, Castillo, and Garza

                      Memorandum
Opinion by Justice Rodriguez

 








Appellees, Ramiro
Betancourt and Stephany Jane Tidwell, were charged in a four count indictment
which included two counts of aggravated sexual assault, one count of
retaliation, and one count of possession or promotion of child pornography.  A hearing was held on appellees= motions to suppress.  After the hearing, the trial court entered an
order granting Betancourt=s motion to suppress the physical evidence seized
during the search of Betancourt=s home.  The
trial court denied Betancourt=s motion to suppress his confession.  The trial court entered a separate order
granting Tidwell=s motion to suppress her written and oral statements
made to law enforcement officers and physical evidence seized during the search
of Betancourt=s home. 
Appellant, the State of Texas, appeals from the trial court=s suppression orders.[1]  We affirm in part and reverse and remand in
part.

                                                              I.  BACKGROUND

As this is a
memorandum opinion and because all issues of law presented by this case are
well settled and the parties are familiar with the facts, we will not recite
the law and the facts here except as necessary to advise the parties of the
Court's decision and the basic reasons for it. 
See Tex. R. App. P. 47.4.  Furthermore, because the two companion cases
arise from the same fact situation and present similar issues for our review,
they will be disposed of in a single opinion.

 








II.  STANDARD OF REVIEW

At a suppression hearing, the trial judge is the sole and exclusive
trier of fact and judge of the credibility of the witnesses and their
testimony.  Maxwell v. State, 73
S.W.3d 278, 281 (Tex. Crim. App. 2002) (en banc).  The appropriate standard for reviewing a
trial court=s ruling on a motion
to suppress is a bifurcated standard of review, giving almost total deference
to a trial court=s determination of
historical facts and reviewing de novo the court=s application of the law.  Id.; Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc). 
Because the trial court did not make explicit findings of fact, we will
review the evidence in the light most favorable to the trial court's ruling and
assume that the trial court made implicit findings of fact that support its
ruling, as long as those findings are supported by the record.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000) (en banc).

III.  CONSENT TO SEARCH

By its first issue, the State argues that the trial court erred in
granting appellees= motions to suppress
physical evidence because Betancourt voluntarily consented to the search of his
mobile home.[2]








Consent to search is one of the well-established exceptions to the
constitutional requirements of both probable cause and a warrant.  Maxwell, 73 S.W.3d at 281 (citing Schneckloth
v. Bustamonte, 412 U.S. 218, 219 (1973); Carmouche v. State, 10
S.W.3d 323, 331 (Tex. Crim. App. 2000)). 
In order for this exception to validate a warrantless search, the State
must show by clear and convincing evidence that consent was freely and
voluntarily given.  See State v.
Ibarra, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997) (en banc).  In determining whether an accused's consent
to search is voluntary, appellate courts must look to the totality of the
circumstances.  Johnson v. State,
68 S.W.3d 644, 653 (Tex. Crim. App. 2002). 


Factors to be examined in determining whether an accused freely and
voluntarily consented include, but are not limited to:  (1) whether, and to what extent, officers
exhibited a show of force, including a display of weapons or other intimidating
tactics; (2) whether the arresting officers engaged in flagrant misconduct; (3)
whether the police threatened to obtain a search warrant, or whether the police
claimed a right to search; (4) whether the police administered Miranda
warnings; (5) whether the arrest was made in order to obtain consent; (6)
whether the accused knew that he could refuse to allow a search; (7) whether
consent was first offered by the accused or was in response to a police
request; and (8) the accused's age, education, intelligence, and physical
condition.  See Frierson v. State,
839 S.W.2d 841, 851 (Tex. App.BDallas 1992, pet.
ref'd); see also State v. $217,590.00 in U.S. Currency, 18 S.W.3d 631,
634 (Tex. 2000) (compiling list of factors from various cases).













With these factors in mind, we review the totality of the
circumstances to determine whether the State met its burden by presenting clear
and convincing evidence that Betancourt=s consent was freely
and voluntarily given.      Based on our
review of the evidence presented at the suppression hearing, we find there was
no evidence that the officers exhibited a show of force or that they displayed
any weapons.  There was no indication
that Betancourt was physically abused or threatened into giving his
consent.  Nor was there evidence of
violence or physical coercion of any type. 
See Lackey v. State, 638 S.W.2d 439, 451 (Tex. Crim. App. 1982)
(en banc) (stating that absence of violence and physical coercion is indicative
that consent was given voluntarily). 
Additionally, there was no evidence of flagrant misconduct by the
officers.  There was no testimony that
the police threatened to obtain a search warrant if Betancourt did not
acquiesce, or that the police claimed a right to search.  In Betancourt=s favor, there was also no evidence that he was
given his Miranda rights, however, this alone is not dispositive.  See Meeks v. State, 692 S.W.2d 504,
510 (Tex. Crim. App. 1985) (stating that lack of warnings, including Miranda
warnings, is probative on the issue of consent, but warnings are not
required).  The record shows that
Betancourt gave a written voluntary consent to search indicating that his
consent was definite and unequivocal.  See
Lackey, 638 S.W.2d at 452.  The
consent was read to Betancourt, and he was allowed to read it himself.  The consent form stated that Betancourt had a
constitutional right to refuse consent. 
Additionally, Betancourt testified that he was twenty-two years old, had
a high school education, was on the chess team in high school and spent time in
the military; factors indicating he was mature, educated, intelligent, and
capable of giving an informed consent. 
The record also shows that Betancourt gave his consent after he was
under arrest.  However, the fact that a
person is under arrest does not, in and of itself, prevent a free and voluntary
consent from being given.  Meeks,
692 S.W.2d at 509.

Viewing the evidence in the light most favorable to the trial court's
decision to suppress and assuming that the trial court made implicit findings
of fact that support its ruling, see Ross, 32 S.W.3d at 855, we find
from a totality of the circumstances that the State has shown by clear and
convincing evidence that Betancourt=s consent was freely
and voluntarily given.[3]  The trial court, therefore, erred in granting
Betancourt=s and Tidwell=s motions to suppress
the physical evidence.  Accordingly, the
State=s first issue is
sustained.  

IV.  CONFESSION

The State argues by its second issue that the trial court erred in
granting Tidwell=s motion to suppress
her confession because there was no evidence in the record to support a finding
(1) that the statement was not freely and voluntarily made without compulsion
or persuasion, or (2) that the statement violated either the United States or
Texas Constitution.








Under constitutional law, the test for voluntariness is whether the
confession is the product Aof an essentially free
and unconstrained choice by its maker.@  State v. Terrazas, 4 S.W.3d 720, 723
(Tex. Crim. App. 1999) (en banc) (citing Schneckloth, 412 U.S. 218, 225
(1973); Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995)
(en banc)).  Article 38.21 provides that
an accused's statement may be used against him Aif it appears that the same was freely and
voluntarily made without compulsion or persuasion.@  Tex.
Code Crim. Proc. Ann. art. 38.21 (Vernon 2005).  AThe determination of
whether a confession is voluntary is based on an examination of the totality of
circumstances surrounding its acquisition.@  Wyatt v. State, 23 S.W.3d 18, 23 (Tex.
Crim. App. 2000) (quoting Penry v. State, 903 S.W.2d 715, 744 (Tex.
Crim. App. 1995)).

Officer Delgado testified that at the time Tidwell=s first statement was
taken she was not under arrest.[4]  He stated that Tidwell was informed of her
rights and indicated she understood those rights.  Admitted as State=s Exhibit 17 was a
Warning and Waiver of Rights initialed and signed by Tidwell.  Officer Delgado stated that Tidwell was never
denied food, water or the ability to go to the bathroom and was free to leave
at any time.  After Betancourt had given
his statement which incriminated Tidwell and himself, Tidwell was placed under
arrest.  According to Officer Delgado,
the following morning Tidwell asked him if she could give another statement at
which time she gave a new statement confessing to the crime.








Tidwell testified that she was read her Miranda rights prior to
giving her first statement and was told she was not under arrest.  She stated that after Officer Delgado typed
her first statement he printed it out, handcuffed her to the chair and then
left the room.  When he came back,
Tidwell signed the statement.  Tidwell
testified that before leaving the sheriff=s office that night
Officer Delgado allowed her to read Betancourt=s statement. 
Tidwell stated that Officer Delgado spoke with her the next morning and
told her she would be facing additional charges, including perjury, if she did
not change her statement to match Betancourt=s.  At that
time, Tidwell gave her second statement confessing to the crime.

Viewing these facts in the light most favorable to the trial court=s ruling, we find that
the trial court erred in suppressing Tidwell=s first statement but was correct in suppressing
her second statement.  The only evidence
in support of suppressing Tidwell=s first statement is
her testimony that she was handcuffed to the chair as Delgado left the
room.  However, this occurred after
Tidwell had been informed of her rights, had voluntarily waived them and had
given her statement.  Therefore, this act
could not have coerced or persuaded her into making the statement.  There was no other evidence showing a
violation of Tidwell=s constitutional and
statutory rights.  Therefore, we conclude
the trial court erred in suppressing Tidwell=s first statement.

However, Officer Delgado=s statement that
Tidwell would face additional charges if she did not change her statement was
sufficiently coercive and supports the trial court=s suppression of
Tidwell=s second
statement.  Thus, we conclude the trial
court did not err in suppressing Tidwell=s second
statement.  Accordingly, the State=s second issue is
sustained in part and overruled in part.

V.  CONCLUSION








Having found Betancourt=s consent to search to
have been made voluntarily, we reverse the orders of the trial court granting
Betancourt=s and Tidwell=s motions to suppress
evidence.  Additionally, we affirm in
part the trial court=s order granting
Tidwell=s motion to suppress
her statement to the extent it suppresses her second statement made to Officer
Delgado, and we reverse in part the trial court=s order to the extent it suppresses Tidwell=s first statement made
to Officer Delgado.  Accordingly, we
remand this cause to the trial court for further proceedings consistent with
this opinion.

 

NELDA
V. RODRIGUEZ

Justice

 

Do not
publish.

Tex.
R. App. P.
47.2(b).

 

Memorandum Opinion
delivered and 

filed this 9th day of
June, 2005.

 











[1]  The State appeals pursuant to
article 44.01(a)(5) of the Texas Code of Criminal Procedure.  See Tex.
Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon Supp. 2004-2005).





[2]  Appellees assert that the State has
waived its issues on appeal by failing to provide a complete transcription of
the suppression hearing which appellees argue took place over a period of two
days.  However, the record shows that the
hearing on the first day was in regards to a motion in limine and that no
evidence was heard at that hearing. 
Therefore, we will address the State=s issues on appeal.





[3]  We note that Betancourt argues his
consent was not voluntary because he was never told what the officers were
searching for or why he was being arrested. 
Betancourt, however, provides no authority for the proposition that
knowledge of the basis for arrest or search is probative on the issue of
whether consent was voluntarily given. 
Even if we did view this in favor of finding his consent to be
involuntary, the overwhelming weight of the evidence would still mandate a
finding otherwise.





[4]  Tidwell=s first statement stated that the
sexual episode between Betancourt, the alleged victim and herself was
consensual.