IN THE COURT OF CRIMINAL APPEALS

OF TEXAS





NO. PD-1193-04






MARY ELIZABETH HARRISON, Appellant


 

v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


TARRANT COUNTY




 

 Keasler, J., delivered the opinion of the Court in which Keller, P.J., Womack,
Hervey, and Cochran, JJ., joined. Price and Johnson, JJ., concurred in the result. 
Meyers, J., filed a dissenting opinion in which Holcomb, J., joined. 


O P I N I O N 


 

 Holding that the State failed to prove by clear and convincing evidence that Mary
Elizabeth Harrison voluntarily consented to provide a urine specimen, the court of appeals
reversed the trial court's denial of Harrison's motion to suppress. (1) We conclude that the
court of appeals erred by so holding.

Facts and Procedural History


 While driving in the City of Arlington on the afternoon of August 8, 2002, Vickie
Evans called 911 to report that Harrison was driving while intoxicated or was having a
seizure. As she continued to follow Harrison, Evans remained on the phone, advising police
of Harrison's location. 

 Officer Lodatto, who was dispatched as a result of Evans's 911 call, first spotted
Harrison as a fellow officer, Officer Constantine, was directing her to pull over and stop in
a parking lot. Evans also stopped. While Constantine initiated contact with Harrison,
Lodatto spoke with Evans. Evans informed Lodatto that while she had been following
Harrison, she observed Harrison going from lane to lane, fidgeting, and "flopping around like
a fish" inside her car. Lodatto then approached Harrison while she was standing outside her
car talking with Constantine. Observing Harrison's behavior and demeanor, Lodatto noticed
that she was "continuously fidgeting, moving around, bending around at the waist, [and]
lifting up her legs . . . ." Lodatto then administered a number of field sobriety tests. Based
on Harrison's overall performance on the tests, Lodatto concluded that Harrison was under
the influence of an intoxicant other than alcohol. 

 Harrison was placed under arrest and transported to the county jail, where Lodatto
asked her to provide breath and blood specimens. After Lodatto warned Harrison of the
consequences of refusing to submit the specimens as required by the Transportation Code, (2)
Harrison consented. When Harrison's breath tested negative for alcohol, Lodatto and another
officer, Officer DeMott, took Harrison to Arlington Memorial Hospital to obtain a blood
sample. Although a nurse tried to draw blood from Harrison's hands and arms five or six
times, a testable amount could not be obtained because her veins repeatedly collapsed. 

 The unsuccessful attempts to draw blood caused Harrison pain and resulted in
bruising. But according to DeMott, Harrison remained cooperative and even assisted the
nurse by instructing her on the best way to take the sample. At some point, the nurse began
to examine Harrison's feet for a site to draw blood. However, DeMott, who had taken note
of the fact that the unsuccessful attempts to draw blood inflicted pain upon Harrison, asked
Harrison if she would be willing to provide a urine sample. Harrison agreed to provide a
urine sample to avoid being stuck with the needle again and to avoid having her driver's
license suspended. Neither officer informed Harrison that she did not have to give a urine
sample. They also failed to inform her that her license would not be suspended in the event
that she refused to provide a urine sample. Harrison's urine did test positive for controlled
substances, and she was later charged with misdemeanor driving while intoxicated. 

 Harrison filed a motion to suppress alleging that her rights under the United States and
Texas Constitutions were violated. She argued that the stop was not supported by reasonable
suspicion and that her consent to provide a urine sample was involuntary. The trial court
denied the motion. The court found that the police had reasonable suspicion for the stop and
that Harrison consented to the urine sample, although it presented a "closer question." 

 On April 21, 2003, pursuant to a plea agreement, Harrison pled guilty. Her sentence
was assessed at 180 days in jail, probated for two years, and a fine of $500. 

 Harrison appealed the trial court's denial of her motion to suppress. She argued that
the trial court erred in finding that the stop was supported by reasonable suspicion. She
further claimed that the court erred in finding that she voluntarily consented to submitting
a urine sample, maintaining that the State failed to prove voluntariness by clear and
convincing evidence.

 Responding to Harrison's claims, the State argued that the trial court did not err in
denying Harrison's motion to suppress. The State claimed that the stop was supported by
reasonable suspicion and that Harrison's consent to provide a urine sample was voluntary. 
Relying on this Court's opinion in Hulit v. State, (3) the State also argued that Article I, Section
9 of the Texas Constitution did not require the State to prove voluntary consent to obtain a
urine sample. Rather, it required the State to establish only that the request was reasonable. 

 The Second Court of Appeals found that "the information provided by Evans was
sufficiently reliable to provide police with reasonable articulable suspicion to initiate an
investigative stop of Harrison." (4) Before determining whether the State proved voluntary
consent, the court stated, "we decline to adopt the State's contention that pursuant to Hulit
. . ., the State has no burden to prove consent or the voluntariness of consent, but must prove
only reasonableness of police conduct." (5) The court went on to find that the State failed to
prove by clear and convincing evidence that Harrison's consent was voluntary. (6) In doing so,
the court stated:

 Because all three witnesses at the suppression hearing agreed that Harrison
was in pain and agreed to provide the urine specimen to avoid further needle
sticks, agreed Harrison was not advised of her right to decline to provide a
urine specimen, and agreed Harrison was not informed her license would not
be suspended if she refused, we cannot hold that the State met its heightened
burden to prove voluntariness of Harrison's consent under the totality of the
circumstances by clear and convincing evidence. (7)


As a result, the court reversed the trial court's judgment and remanded the case for a new
trial. (8)

 The State petitioned for review, and we granted its five grounds for review. The
State's fifth ground for review states: "Do the evidentiary factors relied upon by the court of
appeals to find involuntary consent invade the role assigned to the trial court by failing to
place the evidence in context, and by determining matters of historical fact?" Because the
record shows that the Court of Appeals erred in finding that the State failed to establish
voluntariness, we need not consider the State's first four grounds for review. Law and Analysis Under Article I, Section 9, of the Texas Constitution, "[a] search made after voluntary
consent is not unreasonable." (9) If voluntariness is challenged at trial, "the State must prove
the voluntariness of a consent to search by clear and convincing evidence." (10) A trial judge 
"must look at the totality of the circumstances surrounding the statement of consent in order
to determine whether that consent was given voluntarily." (11) When a trial judge does not enter
findings of fact when denying a motion to suppress, a reviewing court must view the
evidence "in the light most favorable to the trial court's ruling" and "assume that the trial
court made implicit findings of fact that support its ruling as long as those findings are
supported by the record." (12) And almost total deference must be afforded to the trial judge's
rulings on credibility questions. (13) 

 Here, the record reflects that


 Harrison had consented to a much more invasive and painful procedure;
 Harrison at no time withdrew her consent to the blood test;
 police used no coercion or threats to compel consent; and
 Harrison said that she consented to avoid further sticks with the needle and to
avoid having her driver's license suspended.


 The Court of Appeals found that "[t]he fact that Harrison's consent was given to avoid
painful physical pressures--more needle sticks, probably in her feet--weighs against
voluntariness." (14) But the court failed to take into account the fact that Harrison did not
withdraw her consent to provide a blood specimen before she consented to provide a urine
specimen, a less-invasive alternative. So unlike cases where the person's consent is the result
of physical or psychological pressure from law enforcement officials, (15) Harrison willingly
chose to give her consent to a painless alternative. 

 Also, when finding that the State failed in its burden to prove Harrison's consent was
voluntary, the Court of Appeals relied on the fact that the police officers did not inform
Harrison that she could refuse to provide a urine sample and that they failed to advise
Harrison that the consequences applicable to a person's refusal to provide a blood specimen
do not apply when an individual refuses to submit a urine specimen. (16) But the fact that the
statutory warnings were read to Harrison and that she consented to provide a blood specimen
to the police officers does not mean that the officers were then obligated to inform her,
before requesting a urine specimen, that the consequences associated with refusing to provide
a blood specimen do not apply to a person's refusal to submit to a urine specimen. Although
Harrison's belief that the consequences associated with a refusal to provide a blood
specimen, specifically, the automatic suspension of her driver's license, may be a relevant
factor when assessing whether her consent was voluntary, we cannot conclude that it is
controlling. Further, even though a person's knowledge of his or her right to refuse consent
is also a relevant factor when determining voluntariness, it is not determinative. (17) And while
custody is another factor to be considered, (18) "consent is not rendered involuntary merely
because the accused is under arrest." (19) The trial judge, as the fact-finder, presumably
considered these factors when observing the demeanor of the officers and Harrison at the
hearing on the motion to suppress, something that neither we nor the Court of Appeals have
had the opportunity to do. 

 The dissent states that

 [i]t is hard to believe that the trial court could find that it was highly probable
or reasonably certain that Appellant consented to the urine test when she was
not given statutory warnings prior to consenting to giving a urine specimen and
when both officers who testified about the consent stated that they did not
inform Appellant that she could refuse to provide a sample without losing her
driver's license. 


The dissent's reasoning is flawed. Simply put, Texas statutes did not require that Harrison
be given any statutory warnings before she was asked for her consent to provide a urine
specimen. (20) And the officers were not required to inform Harrison that she could refuse to
provide a urine sample without losing her driver's license simply because they first sought
breath and blood specimens after giving her the required statutory warnings. (21) The dissent
also incorrectly states that "the majority claims that because Appellant was given statutory
warnings about giving a blood sample and consented, the officers were not obligated to
inform her that the consequences of failure to consent to giving a breath or blood specimen
do not apply to failure to give a urine specimen." Our conclusion is that the request for
breath and blood specimens, to which the statutory warnings were applicable, is entirely
distinct from the request for a urine specimen. The request for a urine specimen, which
followed the request for breath and blood specimens, did not need to be paired with a
statement that the previously given statutory warnings were inapplicable. 

 It may be argued that Harrison was misled by the officers because had Harrison been
allowed to contact her attorney as she had requested, her attorney could have informed her
that she could refuse the request for a urine sample without losing her license. But Harrison
did not have the right to have an attorney present (22) and, for the reasons discussed above, the
officers did nothing to mislead Harrison. 

 Considering all of the facts before us, and giving proper deference to the trial judge's
credibility determinations, we cannot say that the trial judge erred in deciding that the State
proved by clear and convincing evidence that Harrison's consent was voluntary. 

Conclusion

 We hold that the Court of Appeals erred in finding that Harrison's consent was not
voluntary. We therefore reverse its decision and affirm the judgment of the trial court.



DATE: November 1, 2006

PUBLISH

 

1. Harrison v. State, 144 S.W.3d 82, 89-90 (Tex. App.--Fort Worth 2004).
2. See Tex. Transp. Code §§ 724.011-724.013, 724.015 (Vernon 2001). 
3. 982 S.W.2d 431 (Tex. Crim. App. 1998). 
4. Harrison, 144 S.W.3d at 87. 
5. Id. at n.3. 
6. Id. at 89.
7. Id. 
8. Id. at 89-90. 
9. Reasor v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).
10. Ibarra v. State, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997).
11. Reasor, 12 S.W.3d at 818; see also Johnson v. State, 68 S.W.3d 644, 653 (Tex.
Crim. App. 2002) (citing Ohio v. Robinette, 519 U.S. 33, 40 (1996)).
12. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).
13. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
14. Harrison, 144 S.W.3d at 89.
15. Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993).
16. Harrison, 144 S.W.3d at 89.
17. Draper v. State, 539 S.W.2d 61, 63 (Tex. Crim. App. 1976) (quoting
Schneckloth v. Bustamonte, 412 U.S. 218 (1973)); Allridge v. State, 850 S.W.2d 471, 493
(Tex. Crim. App. 1991). 
18. Meeks v. State, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985).
19. Johnson v. State, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002) (citing Meeks, 692
S.W.2d at 509). 
20. Tex. Transp. Code §§ 724.011-724.013, 724.015. 
21. Tex. Transp. Code § 724.015. 
22. Griffith v. State, 55 S.W.3d 598, 604 (Tex. Crim. App. 2001); Garcia v. State,
787 S.W.2d 957, 958 (Tex. Crim. App. 1990).