In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-24-00036-CR**

**DIHO LLOYD BROWN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 23-01-00062-CR**

## MEMORANDUM OPINION

A jury found Diho Lloyd Brown guilty of possession of a controlled substance and sentenced him to forty years imprisonment.[1] He appeals the denial of his motion to suppress the traffic stop and search that resulted in the discovery of

---

[1]Brown pleaded true to two enhancements regarding two prior felony convictions.

methamphetamine, claiming that the search and seizure were unreasonable. For the reasons discussed below, we affirm Brown's conviction.

## Background[2]

In January 2024, a Montgomery County grand jury indicted Brown for possession of a controlled substance, a second-degree felony. *See* Tex. Health & Safety Code Ann. § 481.115(d). The indictment included two enhancement paragraphs for two prior felony convictions.

That same month, Brown filed a Motion to Suppress Evidence Seized without a Warrant. In the Motion, Brown argued that all evidence seized on or about December 29, 2023, is inadmissible as the search was conducted without a search warrant and was without probable cause or exigent circumstances.

On January 19, 2024, a hearing on Brown's Motion to Suppress was held. At the hearing, the arresting officer, Sergeant Travis Higginbotham with the Montgomery County Constable's Office, testified and a video of his dash camera and body camera were entered as evidence and played. According to Higginbotham, on December 29, 2022, he initiated a traffic stop after he observed a pickup truck

---

[2]Brown does not challenge the sufficiency of the evidence or any other evidentiary rulings during the trial, so we limit our background discussion accordingly. *See* Tex. R. App. P. 47.1 (requiring appellate courts to hand down an opinion "as brief as practicable" but addressing every issue raised and necessary to the appeal's final disposition).

traveling over the posted speed limit. Higginbotham testified that he turned on his emergency lights and then his siren, but it took the driver over a minute to pull over. He acknowledged that he originally thought the driver was looking for a place to pull over, but once the driver continued, he turned on his siren. He further acknowledged that in his training and experience as a peace officer, when a vehicle prolongs pulling over for this length of time, the occupant(s) are looking to evade or conceal something. Higginbotham made contact with the driver, who provided his identification card, which identified Brown as the operator of the pickup truck.

Higginbotham testified that he requested to search the vehicle, and Brown was hesitant but stated "he had nothing to hide, to go ahead." Higginbotham did not locate any contraband inside the vehicle, so he spoke further with Brown because he suspected that Brown was concealing something based on how long it took for him to pull over. He testified that he checked Brown's clothes, including shaking his clothes, to see if anything would fall out.

According to Higginbotham, he asked to check Brown's shoes, and Brown handed him his shoe. As Higginbotham grabbed the shoe, Brown tried pulling it back and Higginbotham noticed a clear plastic top or bag inside. Higginbotham also indicated that when Brown held onto the shoe, as Higginbotham put his hand on it, he told Brown to go ahead and let go. Higginbotham testified that he handcuffed and

detained Brown to determine what was inside his shoe. Higginbotham stated that based on the way Brown continued to hold onto his shoe, he felt Brown was concealing something.

Higginbotham testified that Brown never said, "no or you can't search or I don't want you searching that." He stated that during the interaction, they discussed casual things such as tattoos and work, and that Brown was not being uncooperative.

On cross-examination, Higginbotham testified that he did not initiate the stop with Brown because he is black or had tattoos, because he did not know Brown's race and did not know Brown had tattoos until he got to the door. He stated that his sole reason to turn around after Brown passed him was because Brown was going three miles per hour over the posted speed limit.

Higginbotham testified that he calibrated the radar before beginning his shift, and he explained how the calibration is done. He indicated that he does not keep a calibration date log, nor does he have a maintenance and repair log. Though he did not know the age of the radar, he had been using it since he was assigned that patrol car in 2020. He testified that he does not have a certification of accuracy on the tuning forks, and he indicated that he has never calibrated the tuning forks and is unaware that the tuning forks are supposed to be or could be calibrated.

Higginbotham testified that he has not reviewed the Texas Law Enforcement manual on calibrating tuning forks and has only calibrated his radar using the tuning forks.

Higginbotham again testified that he told Brown to let him see his shoe and later to let the shoe go when he tried pulling it away instead of handing it to Higginbotham. He indicated that he did not use the K9 dog that was present to sniff around Brown because the dog is trained to track and attack, and there was no point in risking Brown getting hurt. Higginbotham testified that it was an indication that something was wrong when someone pulls something away from him and that he wanted to make sure there was nothing that would "get us both in trouble."

Higginbotham further testified that he did not need to deploy the K9 dog because Brown granted his request to search his vehicle, and Brown did not refuse the search of his person. According to Higginbotham, Brown never revoked consent or stated that he wanted him to stop searching.

Next, Trooper Eric Cisneros testified that prior to his current role with the Department of Public Safety as a highway patrol trooper, he worked as a constable and K9 handler for Montgomery County. According to Cisneros, he was working patrol for the Montgomery County Constable's Office on December 29, 2022, when he observed another patrol unit with lights activated attempting to conduct a traffic stop on a pickup truck. Cisneros testified that when the truck passed, he noticed the

driver leaning down on the left side of the truck and this raised his concern that there were weapons inside. In response, Cisneros followed the suspect and the deputy to assist with the traffic stop.

Once stopped, Cisneros indicated that Higginbotham was speaking with Brown, and Brown then stood near Cisneros at the front of Higginbotham's patrol vehicle. Cisneros indicated that once he was provided with Brown's identification, he went to check it. According to Cisneros, Brown was cooperative, talkative, calm and not aggressive. Cisneros testified that after checking Brown's identification, he observed Higginbotham and Brown holding a shoe and when Brown let it go, Higginbotham instructed Brown to put his hands behind his back. Cisneros then assisted Higginbotham in securing Brown in handcuffs and Higginbotham then showed Cisneros the shoe. According to Cisneros, he saw a small clear baggie with multi-colored pills inside Brown's left shoe.

At the conclusion of the hearing, the trial judge denied Brown's Motion to Suppress and issued verbal findings of fact. According to the trial judge, Higginbotham was certified to use the radar, and he verified its accuracy with the tuning fork, therefore the traffic stop, for going forty-three miles per hour on a road with a speed limit of forty, was proper. The trial judge then indicated that to determine if consent was given, he considered voluntariness, scope, and authority.

Because Brown had authority to consent to his person, there was authority to consent to a search.

Next, the trial judge stated the shoe was within the scope of Brown's consent based on Brown's positive response to allow the search of the car, the search of his person, and when he handed the shoe to Higginbotham. The trial judge stated that Brown's consent was voluntary since there was no withdrawal of the consent based on the *Illinois v. Rodriguez* test. *See Illinois v. Rodriguez*, 497 U.S. 177 (1990). Finally, the trial judge found the testimony of the witnesses to be credible.

The trial judge also issued written Findings of Fact and Conclusions of Law that, among other things, stated:

- This Court finds Trooper Cisneros' testimony to be credible.
- This Court finds Sergeant Higginbotham's testimony to be credible.
- Higginbotham asked the defendant if he minded if Higginbotham searched his vehicle and let the defendant know it was "up to him."
- The defendant said he had nothing to hide and stepped out of the vehicle for Higginbotham to search.
- Higginbotham asked the defendant if he had anything on him in his pockets or pants and the defendant responded multiple times "You're more than welcome to search" and lifted his shirt and turned around.
- The defendant gave consent for Higginbotham to search his person.
- The defendant did not limit the scope of his consent to the search of his person.
- Higginbotham asked the defendant if there was anything in his shoes and the defendant responded that there was not.

7

- When Higginbotham told the defendant to move his feet to show the outside edges, the defendant moved his feet as requested.
- When Higginbotham said "let me see" to the defendant, the defendant removed his left shoe, held it by the heel, and handed it to Higginbotham.
- Higginbotham grabbed the toe of the left shoe to receive it from the defendant and the defendant did not release his hold of the heel of the shoe.
- Higginbotham told the defendant to "go ahead and let go" and the defendant did not let go and did not say anything.
- The defendant did not withdraw his consent to the search of his person, including his shoes.
- Higginbotham saw a piece of clear plastic within the left shoe.
- Higginbotham asked the defendant "where's it at" and the defendant removed his right shoe on his own and handed it to Higginbotham while stating he did not have anything.
- Higginbotham viewed the inside of the left shoe and saw the contents of the plastic bag in the left shoe to contain multiple multi-colored pills and placed the defendant in handcuffs with the assistance of Trooper Cisneros.

CONCLUSIONS OF LAW

- The traffic stop was reasonable and supported by probable cause. *See* U.S. CONST. amend. IV, Tex. Const. art. I, § 9.
- The defendant provided valid consent to the warrantless search of his vehicle and of his person. *See* U.S. CONST. amend. IV; Tex. Const. art. I, § 9.
- The defendant's warrantless arrest was authorized under article 14.01. *See* Tex. Code Crim. Proc. Ann. art. 14.01 (West 2015).
- The defendant's warrantless arrest was authorized under article 14.03(a)(1). *See* Tex. Code Crim. Proc. Ann. art. 14.03(a)(1) (West Supp. 2017).

**Analysis**

In his sole appellate issue, Brown challenges the trial court's denial of his motion to suppress. Brown argues that although he initially gave verbal consent to Higginbotham to search his person, Brown's unwillingness to release his shoe when Higginbotham was holding it indicated that he did not want Higginbotham to have the shoe and that Brown had changed his mind, thus revoking his consent. He contends that Higginbotham did not ask for his consent to search his shoe but commanded that Brown "let him see it." Brown argues that when an officer commands or directs compliance to a search, a verbal or nonverbal response that does not clearly indicate consent is seldom deemed a manifestation of consent. He asserts that as a result of the suppression denial, his right to be protected against unreasonable searches and seizures was violated under the Fourth Amendment. Brown contends that this was a harmful error, as the State used the contraband as evidence to convict him.

We review a ruling on a motion to suppress utilizing a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts and reviewing the application of law to the facts de novo when not based on credibility and demeanor. *See Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008); *Carmouche*

9

*v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). In a motion to suppress hearing, "the trial judge is the sole trier of fact and judge of credibility of witnesses and the weight to be given to their testimony." *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018) (citation omitted). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (citation omitted). If the trial judge's decision is correct under any theory of law applicable to the case, the decision will be sustained. *Ross*, 32 S.W.3d at 855–56. We may reverse only when the decision is arbitrary, unreasonable, or outside the zone of reasonable disagreement. *See State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018).

Generally, a defendant satisfies his burden of rebutting the presumption of proper police conduct when he establishes that a search or seizure occurred without a warrant. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Upon a showing that the search was conducted without a warrant, the burden shifts to the State to prove the applicability of an exception to the rule against warrantless searches. *See Neal*, 256 S.W.3d at 282. One exception is a defendant's voluntary

10

consent to the search. *See Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000). The State must establish that the defendant voluntarily consented to a warrantless search by clear and convincing evidence. *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011).

To be valid, a defendant's consent must be "freely and voluntarily given" and not simply acquiescence to a claim of lawful authority. *Bumper v. North Carolina*, 391 U.S. 543, 548–49 (1968). While an officer's testimony that a defendant's consent was voluntary and without coercion may be sufficient, "the question of whether consent to a search was in fact 'voluntary' or was the product of duress or coercion, express, or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *see Meeks v. State*, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985) (discussing totality of the circumstances); *Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000).

At the suppression hearing, the trial court heard testimony from both officers involved in the traffic stop and search. The body camera footage shows that Higginbotham asked Brown if he had anything in his pockets or under his pants, and in response, Brown stated that he had nothing and he raised his shirt, raised his hands, and turned around while Higginbotham shook Brown's pants. While Higginbotham did that, Brown stated that Higginbotham was more than welcome to

11

search him. Higginbotham testified that he did this because Brown wore baggy clothes, and he wanted to see if anything would fall out. While Officer Cisneros checked the status of Brown's license, Higginbotham and Brown talked and Higginbotham then asked Brown if he had anything in his shoe. Brown responded that he did not, and he began lifting his foot in response to Higginbotham's request to "lift them up." Higginbotham then asks Brown to "let him see" and Brown takes off his left shoe and holds the back of the shoe. Higginbotham grabs the shoe, tells Brown to "go ahead and let go" twice, and Brown releases the shoe. Brown then hands Higginbotham his right shoe and Higginbotham then asks Brown "where's it at" and says "you keep pulling your shoe" but Brown denies anything being in the shoe. Higginbotham testified that he noticed a clear bag inside the shoe, and he then handcuffed Brown.

Based on the record before us, the evidence establishes that Brown freely and voluntarily consented to the search of his person, removed his shoe willingly, and though he hesitated, Brown let go of the shoe ultimately and handed the shoe to Higginbotham. *See Valtierra v. State*, 310 S.W.3d 448–49 (Tex. Crim. App. 2010) (explaining that the objective reasonableness is the standard for measuring the scope of the consent and that "a person's silence in the face of an officer's further actions may imply consent to that further action[]"). During the stop, Brown and

12

Higginbotham spoke respectfully about Brown's past and employment, Higginbotham did not draw his weapon or deploy the drug dog, nor did Higginbotham exhibit any threatening, coercive, or forceful conduct and Brown did not appear to be under duress or coercion. *See Meeks*, 692 S.W.2d at 509 (explaining that consent to search may not be physically or psychologically coerced). Therefore, based the totality of the circumstances and Brown's actions, Brown consented to the search and did not revoke his consent. *See Schneckloth,* 412 U.S. at 227; *Meeks,* 692 S.W.2d at 509. We conclude that the trial court did not abuse its discretion by denying Brown's motion to suppress. We overrule Brown's sole issue.

## Conclusion

Having overruled Brown's sole issue, we affirm the trial court's judgment.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on September 12, 2025
Opinion Delivered January 28, 2026
Do Not Publish

Golemon, C.J., Wright and Chambers, JJ.

13