NO. 07-05-0197-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 24, 2006

_____

WAYLON HERNANDEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 10,604; HONORABLE TOM NEELY, JUDGE
_____

Before REAVIS and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, Waylon Hernandez, appeals his conviction for aggravated assault with a deadly weapon and sentence of 20 years confinement in the Texas Department of Criminal Justice - Institutional Division.  We affirm.

Background

On August 29, 2004, Winston Jones, a 14 year old, was shot in the leg in a drive-by shooting in Vernon, Texas.  Appellant, his brother Freddie, and Freddie's wife, Jamie, were

arrested and charged with aggravated assault with a deadly weapon relating to Jones's shooting.

At appellant's trial, Freddie and Jamie both testified that appellant shot at a group of people on August 29, 2004. However, as both Freddie and Jamie were accomplices of appellant in committing the offense, to obtain a conviction of appellant, the State needed to provide additional evidence to corroborate their testimony. See TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). The victim of the shooting testified that he could not identify the person that shot him. Another person in the group that was shot at identified appellant as the shooter, but in further testimony he seemed to confuse appellant and his brother.

As further corroboration, the State sought to admit a letter appellant wrote to his wife, Amanda Hernandez. In the letter, appellant stated that, "Theres [sic] this bitch ass nigger down there that (I think) is related to them niggers that I shot at." Outside of the presence of the jury, the State called Amanda as a witness to authenticate that the letter was written by appellant. Both Amanda and appellant objected to Amanda being called as a witness for the State. The trial court overruled the objections after confirming that the victim was 14 years old at the time he was shot.

Amanda testified that she had contacted investigators with the district attorney's office informing them that she had some letters that she had received from appellant. Amanda testified that she turned these letters, including the letter sought to be admitted, over to the authorities out of fear that she might be arrested for aiding and abetting appellant and at the urging of her mother. She testified that the letter containing appellant's

2

confession was received while appellant was in jail, that the letter was in appellant's handwriting, that the signature was appellant's signature, and that she kept the letter in the envelope that it had been delivered in. The State did not question Amanda as to the contents of the letter. Following Amanda's testimony, the State offered the letter. Appellant objected based on the Husband-Wife Privilege of Texas Rule of Evidence 504,[1] the letter being illegally obtained, and relevance. The trial court overruled each of appellant's objections and admitted the letter.

Following trial, the jury returned a verdict finding appellant guilty of aggravated assault with a deadly weapon. After a separate sentencing hearing, the jury sentenced appellant to 20 years incarceration in the Institutional Division of the Texas Department of Criminal Justice.

By three issues, appellant contends that the trial court erred in requiring Amanda to testify as a witness for the State, admitting the letter because it was illegally obtained, and admitting the letter because it was not relevant.

Standard of Review

Each of appellant's issues relate to evidentiary rulings made by the trial court. A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. See Weatherred v. State, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000); Green v. State, 934 S.W.2d 92, 101-02 (Tex.Crim.App. 1996); Montgomery v. State, 810 S.W.2d.

---

[1]Further reference to Texas Rules of Evidence will be by reference to "Rule ___."

3

372, 390 (Tex.Crim.App.1990) (op. on reh'g). A reviewing court should not reverse a trial judge's decision whose evidentiary ruling was within the zone of reasonable disagreement. Green, 934 S.W.2d at 102. In other words, a trial court abuses its discretion only if the reviewing appellate court can say with confidence that no reasonable perception of the matter under consideration could have yielded the decision made by the trial court. See Montgomery, 810 S.W.2d at 391.

However, even if a trial court's decision to admit or exclude evidence is proven to have been in error, the error must be disregarded if the error did not affect the defendant's substantial rights. Tex. R. App. P. 44.2(b). An error affects a substantial right of the defendant when the error has a substantial and injurious effect or influence in determining the jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997).

## Issue 1: Husband-Wife Privileges

Generally, Rule 504 protects witnesses from being required to testify or provide evidence against their spouse. The Rule provides two separate privileges: a confidential communication privilege, which may apply in civil or criminal proceedings, and a privilege not to be called as a witness for the State, which applies only in criminal cases. Compare Rule 504(a) with (b). However, these privileges are limited in certain situations. See Rule 504(a)(4), (b)(4).

In the present case, appellant contends that the trial court erred in overruling his objection to his wife being called as a witness for the State. As such, appellant's issue relates to the testimonial privilege contained in Rule 504(b). This testimonial privilege may

4

only be invoked by the spouse being called to testify. See Rule 504(b)(3). However, as Amanda invoked this privilege when called, appellant's issue is properly before this court.

A spouse's privilege not to be called as a witness for the State is not absolute. See Rule 504(b)(4). The testimonial privilege does not apply "[i]n any proceeding in which the person [the defendant] is charged with a crime against the person's spouse, a member of the household of either spouse, or any minor." Rule 504(b)(4)(A). Appellant contends that, for the exception to apply, the defendant must be charged with a crime which requires, as an element of the offense, proof that it was committed against a member of one of the specified groups. The State contends that the invocation of the privilege may be overcome whenever it is shown that the victim of the crime identified in the indictment was a member of one of the groups specified in the exception. We have found no judicial construction of the meaning of the phrase "charged with a crime against," as used in Rule 504(b)(4)(A).

Because of confusion involving whether the minor child exception to the testimonial privilege applied only to children of either spouse or to any minor, Rule 504 was amended in 1998 to clarify that the exception applies to any minor. See Huddleston v. State, 997 S.W.2d 319, 321 (Tex.App.–Houston [1st Dist.] 1999, no pet.). In addition, the 1998 amendment included crimes against the testifying spouse within the scope of the exception. See Rule 504(b)(4)(A). The comment to the 1998 amendment states that the spousal testimonial privilege is eliminated when the testifying spouse is the alleged victim of a crime by the accused. Rule 504 cmt. (emphasis added). As the exception uses the same "charged with a crime against" language in reference to the testifying spouse as it does in

reference to a minor, we conclude that the exception was intended to abrogate the privilege whenever a minor is the alleged victim of the crime charged.

In the present case, the State proved that Winston Jones was a minor at the time that appellant shot him. Since appellant was "charged with a crime against . . . any minor," we conclude that the trial court did not err in overruling Amanda's invocation of her testimonial privilege. We overrule appellant's first issue.

## Issue 2: Illegal Search

Appellant contends that the trial court erred in admitting the letter appellant wrote Amanda because it was obtained as a result of an illegal search. Appellant argues that, while Amanda consented to investigators with the district attorney's office coming to her home to retrieve letters she had received from appellant, Amanda's consent was the result of the investigators' coercion. Alternatively, appellant contends that, even if the search is found to have been consensual, the scope of that consent was exceeded when the investigators seized the entire bundle of letters.

Warrantless searches are presumptively unreasonable, but there are a few limited exceptions to this general rule. United States v. Karo, 468 U.S. 705, 717, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). One such exception is a search conducted pursuant to voluntary consent. Reasor v. State, 12 S.W.3d 813, 817 (Tex.Crim.App. 2000). Before consent to search is deemed voluntary, the state must prove by clear and convincing evidence that the consent was freely and voluntarily given. Id.; Meeks v. State, 692 S.W.2d 504, 509 (Tex.Crim.App. 1985). The burden is on the prosecution to show that consent was

6

positively and unequivocally given without duress or coercion. Meeks, 692 S.W.2d at 509. Whether consent was given voluntarily is a question of fact to be determined from the totality of the circumstances surrounding the giving of consent. Id. at 510. The scope of a consensual search is determined by what a reasonable person would have expected the search to include. See Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). In a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. Romero v. State, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990).

In the present case, the record reflects that the investigators did threaten to arrest Amanda on the day that they retrieved the letters. However, the record further reflects that the investigators had authority to arrest Amanda for harboring a fugitive when appellant was found in her home after she had reported that he was not there. When Amanda expressed concern that she had no one to care for her child should she be arrested, the investigators informed her that Children's Protective Services could be called to take temporary custody of the child. The investigators made these threats independently of any investigation of appellant and the threats were not made in an attempt to elicit incriminating evidence to be used against appellant. Further, any coercive effect of the threats was attenuated when the investigators, as they were leaving Amanda's home, informed her that she was not going to jail.

After the investigators left with appellant, Amanda's mother advised her that she needed to cooperate with the investigation of appellant. At her mother's urging, Amanda contacted the investigators and informed them that she had "some letters that they could

7

look at . . . ." Only two investigators went to Amanda's residence to retrieve the letters. When the investigators entered Amanda's residence, she had a group of letters separated into a bundle. Amanda testified that she told the investigators that she would go through the letters and call them if she found "something." She testified that she did not intend for the investigators to take all of the letters, but she did not identify which letters she intended to turn over or which letters she had intended to keep. Greg Tyra, one of the investigators, testified that Amanda simply handed a bundle of letters to the investigators and that this bundle included the letter that the State sought to admit in this case.

Viewing the totality of the circumstances surrounding Amanda's consent, we conclude that Amanda positively and unequivocally consented to the investigators' intrusion into her residence to retrieve the letters and that this consent was not the result of coercion.

As the testimony regarding the scope of the consensual search was in direct conflict, we must defer to the trial court's factual determination regarding how the letter sought to be admitted was obtained. Romero, 800 S.W.2d at 543. Further, we conclude that a reasonable person would have expected that the scope of the consensual search would have included the entire bundle of letters based on the totality of the circumstances surrounding Amanda's consent. See Jimeno, 500 U.S. at 251.

Concluding that Amanda voluntarily gave the investigators consent to search and that the investigators did not exceed the scope of that consent, we overrule appellant's second issue.

Issue 3: Relevance

8

Finally, appellant contends that the trial court erred in admitting the letter because the letter was not relevant because it was dated approximately eight months prior to the assault for which appellant was being tried. The State contends that it provided sufficient evidence to create a fact question as whether the letter was written after and in reference to the alleged assault, and the determination of the letter's relevance was not an abuse of discretion.

Relevant evidence is evidence which has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 401. The determination of the relevance of evidence lies largely within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of that discretion. Moreno v. State, 858 S.W.2d 453, 463 (Tex.Crim.App. 1993).

In the present case, it is undisputed that the letter in question bears the date of January 16, 2004. However, Amanda testified that she received the letter in 2005 and that the letter was misdated. Amanda further testified that she keeps letters in the envelopes she receives them in and that the envelope which contained this letter was postmarked January 2005. However, Amanda also testified that she could not be certain that she received that letter in that envelope. Chief Deputy Larry Lee testified that appellant was incarcerated in the Wilbarger County Jail from September 13, 2004 until February 4, 2005, that the return address on the envelope that contained the letter was the address of the Wilbarger County Jail, and that the records do not indicate that appellant had ever been

9

incarcerated in the Wilbarger County Jail prior to September of 2004. Thus, a fact question existed as to whether the letter was written before or after the alleged assault.

It was for the fact finder to resolve inconsistencies in testimony and to resolve the issue of whether the letter was written at a time when it could be referencing the assault on Winston Jones. See Santellan v. State, 939 S.W.2d 155, 164 (Tex.Crim.App. 1997). Considering the conflict in the testimony concerning when this letter was written, we cannot say that the trial court's determination that the letter was relevant to appellant's trial for assault constituted a clear abuse of discretion. Consequently, we overrule appellant's third issue.

## Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Publish.

10