

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-12-00383-CR
_____

STATE OF TEXAS, APPELLANT

V.

HAYDEN HUSE, APPELLEE

On Appeal from the County Court of Law No. 1
Lubbock County, Texas
Trial Court No. 2011-467345; Honorable Mark Hocker, Presiding

March 6, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, State of Texas, appeals the trial court's order suppressing medical records of Appellee, Hayden Huse, in a misdemeanor, driving while intoxicated case.[1] In support of its position that the trial court erred in suppressing those records, the State asserts: (1) Appellee lacked standing to challenge the grand jury subpoena by which the State obtained those records; (2) the trial court erroneously concluded the State

---

[1] See TEX. PENAL CODE ANN. § 49.04 (West Supp. 2013).

unlawfully obtained Appellee's medical record because the State did comply with federal requirements under the Health Insurance Portability and Accountability Act of 1996 (HIPAA);[2] (3) the trial court erroneously concluded Appellee's medical records should be suppressed under article 38.23 of the Texas Code of Criminal Procedure because those records were legally obtained; and (4) the trial court erroneously concluded Appellee's blood-alcohol test results were scientifically unreliable or irrelevant. We reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

On February 13, 2010, at approximately 2:00 a.m., Appellee failed to make a turn and drove his car into a dirt embankment before coming to stop in a cotton field. Lubbock County Sheriff deputies responded to the accident, and Appellee was transported to a hospital due to injuries he sustained in the accident. When Texas Department of Public Safety Trooper Troy McKee arrived to investigate, the deputies told him Appellee's breath smelled of an alcoholic beverage.

At approximately 5:15 a.m., Trooper McKee arrived at the hospital. He also noticed Appellee smelled of an alcoholic beverage and that his eyes were red, bloodshot, and watery. Trooper McKee was unable to administer any field sobriety tests due to Appellee's injuries. During their conversation, Appellee admitted that, prior to the accident, he drank six to seven beers between 7:30 and 11:30 p.m. at several

---

[2] *See* Pub. L. No. 104-191, 110 Stat. 1936 (1996), codified as amended at 42 U.S.C. §§ 1320d-1320d-8 (West 2012). Specifically, the State asserts the disclosure of Appellee's medical records did not violate HIPAA's Privacy Rule. The United States Department of Health and Human Services promulgated the Privacy Rule under title 45 of the Code of Federal Regulations. *See* 45 C.F.R. pts. 160 & 164 (2013) (Privacy Rule).

2

local bars. Appellee also indicated his last drink was at 11:30 p.m. and he had nothing to drink since the accident. Based on this information coupled with Appellee's failure to negotiate the curve resulting in the accident, Trooper McKee believed Appellee was intoxicated when the accident occurred. He did not request a mandatory blood draw and Appellee refused to give a breath or blood specimen. Hospital personnel had, however, drawn Appellee's blood for medical purposes at approximately 4:50 a.m.—two hours and fifty minutes after the accident.[3]

Based upon Trooper McKee's offense report, on March 30, 2010, a Lubbock Assistant County Criminal District Attorney filed an application for a subpoena seeking Appellee's medical records related to his injuries from the accident. At that time, no grand jury investigation concerning Appellee was pending. The next day, Appellee was charged by Complaint and Information in Cause No. 2010-460,173, with driving while intoxicated. Ultimately, Appellee's medical records were obtained as a result of the March 30 subpoena when, on April 15, 2010, a hospital business records affidavit, with Appellee's medical records attached, was delivered to the Criminal District Attorney's Office.

On December 15, 2010, Appellee filed a generic motion to suppress, seeking suppression of any evidence obtained as the result of "illegal acts on behalf of the State" committed on February 13, 2010, the date of the accident. That motion was subsequently amended on March 14, 2011, to specifically seek suppression of blood evidence "illegally" taken in violation of Appellee's rights under HIPPA, through the use

---

[3] The results of Appellee's blood serum test by hospital personnel showed Appellee's blood alcohol content was 0.219. Other emergency room records indicate Appellee was diagnosed as suffering from acute alcohol intoxication.

of a "sham" grand jury subpoena. Before an order disposing of that motion was entered, the prosecution of Cause No. 2010-460,173 was dismissed on September 27, 2011, on the State's motion.

Eight days later, on October 5, 2011, a second application for a subpoena was filed, again seeking production of Appellee's medical records related to his injuries resulting from the accident. This time the application was signed by the foreman of the grand jury. That same day, the District Clerk issued a new "Grand Jury Subpoena." The next day, Appellee was again charged with driving while intoxicated—this time in Cause No. 2011-467,345—arising out of the same events of February 13, 2010. Shortly thereafter, on October 11, 2011, the hospital's business records affidavit and Appellee's medical records were again delivered to the Criminal District Attorney's Office.[4]

On January 25, 2012, a suppression hearing was held addressing the issues originally raised in the amended motion to suppress filed in Cause No. 2010-460,173. In addition to testimony of Trooper McKee, the facts surrounding the subpoena process and the obtaining of medical records were stipulated to between the State and Appellee, leaving only the issue of whether Appellee's medical records were illegally obtained and, therefore, excludable.

On August 6, 2012, the trial court granted Appellee's amended motion to suppress and on November 30, 2012, it filed its *Trial Court's Findings of Fact and Conclusions of Law*. In those *Findings* the trial court found, in pertinent part, that: (1)

---

[4] Appellee's medical records produced under the second grand jury subpoena were essentially the same as those produced under the first grand jury subpoena.

4

Appellee had standing to challenge the grand jury process by which the State obtained his medical records; (2) HIPAA creates an expectation of privacy in a person's medical information; (3) the first grand jury subpoena was defective; (4) medical records obtained pursuant to the first grand jury subpoena violated HIPAA; (5) the second grand jury subpoena did not cure the first subpoena's HIPAA violation;[5] (6) the State failed to demonstrate any attenuation of the taint arising from the first grand jury subpoena, (7) the State did not acquire Appellee's medical records via a warrant; (8) article 38.23 of the Texas Code of Criminal Procedure applies because the State violated state and federal law through the use of the first subpoena; (9) the grand jury subpoenas used to obtain Appellee's HIPPA protected medical records were unlawful, (10) the doctrine of inevitable discovery is not available under Texas law; and (11) there is no scientifically reliable way to relate Appellee's medically tested serum blood-alcohol level back to a whole blood-alcohol level at the time of driving. This appeal followed.

**DISCUSSION**

STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Ford v. State,* 158 S.W.3d 488, 493 (Tex. 2005). We do not engage in our own factual review, *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990), but give almost total deference to the trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App.

---

[5] Appellee does not assert nor did the trial court conclude in its *Conclusions of Law* that the second grand jury subpoena was defective.

5

2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). When the trial court's rulings are reasonably supported by the record and are correct under "any theory applicable to the case," an appellate court should affirm. *State v. White*, 306 S.W.3d 753, 757, n.10 (Tex. Crim. App. 2010). *See also Calloway v. State*, 743 S.W.2d 645, 651-52 (Tex. Crim. App. 1988) (leading some legal analysts to refer to this rule as "the *Calloway* rule"). Accordingly, if the trial court's findings are supported by the record, we must affirm the decision if it is supported by our *de novo* review of the theories of law "applicable to the case." *Kelly*, 204 S.W.3d at 819.

MOTION TO SUPPRESS

A motion to suppress is a specialized objection regarding the admissibility of evidence. *Hall v. State*, 303 S.W.3d 336, 342 n.9 (Tex. App.—Amarillo 2009, pet. ref'd). *See Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) (op. on reh'g). Such a motion is the proper remedy when evidence is illegally obtained in violation of a defendant's constitutional or statutory rights. *Hall,* 303 S.W.3d at 342 n.9 (citing *Wade v. State*, 814 S.W.2d 763, 764 (Tex. App.—Waco 1991, no pet.)). *See Reyes v. State*, 361 S.W.3d 222, 230 (Tex. App.—Fort Worth 2012, pet. ref'd).[6] Only those acts which violate a person's privacy rights or property interests are subject to the state or federal exclusionary rule. *Miles v. State,* 241 S.W.3d 28, 36 n.33 (Tex. Crim. App. 2007). *See,*

---

[6] As a procedural safeguard, a defendant has at least two opportunities to seek redress for any alleged violation of law by (1) filing a pretrial motion to suppress evidence or (2) objecting to the admission of the evidence at the time it is offered at trial and request a hearing outside the presence of the jury. *Hall,* 303 S.W.3d at 342.

6

*e.g., Chavez v. State,* 9 S.W.3d 817, 822 (Tex. Crim. App. 2000) (Price, J., concurring) ("[U]nless someone's privacy or property interests are illegally infringed upon in the obtainment of evidence, the core rationale for providing this prophylactic measure is not met and its use is unwarranted.").

The mere filing of a motion to suppress does not impose on the State the initial burden of showing compliance with the law. *Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005). It is "settled law that the burden of proof is initially on the defendant to raise the exclusionary rule issue by producing evidence of a statutory violation, and that this burden then shifts to the State to prove compliance." *Pham v. State*, 175 S.W.3d 767, 772, 773 (Tex. Crim. App. 2005) ("We have long held that the burden of persuasion is properly and permanently placed upon the shoulders of the moving party."). Before evidence is rendered inadmissible, the defendant must also show a causal connection between the violation and the evidence obtained. *Id.* at 773. If there is no causal relationship between the illegal conduct and the acquisition of the evidence, the evidence is not obtained in violation of the law. *Bell v. State*, 169 S.W.3d 384, 391 (Tex. App.—Fort Worth 2005, pet. ref'd) (citing *Gonzales v. State*, 67 S.W.3d 910, 912 (Tex. Crim. App. 2002)). After defendant establishes a violation of the law and produces evidence of a causal connection, the State may either disprove the causal connection or make an attenuation-of-taint argument. *See Wilson v. State*, 277 S.W.3d 446, 448 (Tex. App.—San Antonio 2008), *aff'd*, 311 S.W.3d 452 (Tex. Crim. App. 2010).[7]

---

[7] If arguing attenuation-of-taint doctrine, the State must establish the taint of the illegality was so far removed from obtaining the evidence that the causal chain is broken. *Pham*, 175 S.W.3d at 773. When determining whether the taint of a violation of law was attenuated; the court considers the following

"When a hearing on [a] motion to suppress is granted, the court may determine the merits of said motion on the motions themselves, or upon opposing affidavits, or upon oral testimony, subject to the discretion of the court." TEX. CODE CRIM. PROC. ANN. art. 28.01 § 1(6) (West 2006). A motion to suppress that is sworn to or supported by affidavit and admitted into evidence at the hearing may be considered as evidence. *See Gonzales v. State*, 977 S.W.2d 189, 190 (Tex. App.—Austin 1998, pet. ref'd) ("[M]otions to suppress [are] mere pleadings; they [are] not self-proving and they [are] not evidence."). *See also Bizzami v. State*, 492 S.W.2d 944, 946 (Tex. Crim. App. 1973) (allegations in a brief do not constitute proof).

For purposes of logical analysis, we will address issue one, pertaining to standing, first. We will then briefly address issues two and three together, before finally addressing issue four separately.

ISSUES ONE—STANDING

By its first issue the State asserts Appellee lacked standing to challenge the grand jury subpoena by which the State obtained Appellee's medical records because Appellee did not have a reasonable expectation of privacy in the blood-alcohol test results obtained by hospital personnel for medical purposes after the accident. Accordingly, the State contends the trial court erred in finding that he had standing to challenge the grand jury subpoenas by which the State obtained his medical records because it erroneously rejected the holding of the Criminal Court of Appeals in *State v.*

---

four factors: (1) whether *Miranda* warnings were given; (2) the violation's temporal proximity; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *Johnson v. State*, 871 S.W.2d 744, 751 (Tex. Crim. App. 1994).

*Hardy*, 963 S.W.2d 516, 527 (Tex. Crim. App. 1997) and our holding in *Kennemur v. State*, 280 S.W.3d 305 (Tex. App.—Amarillo 2008, pet. ref'd), *cert. denied*, 556 U.S. 1191, 129 S.Ct. 2005, 173 L.Ed.2d 1101 (2009).

In *Kennemur*, appellant asserted that his medical records resulting from emergency treatment at a hospital following a traffic accident caused by his intoxication were obtained in violation of HIPAA's Privacy Rule. *Id.* at 311. We held appellant lacked standing to challenge the State's use of his medical records at trial due to an alleged HIPAA violation under *Hardy* and stated the following:

> There is no Fourth Amendment reasonable expectation of privacy protecting blood-alcohol test results from tests taken by hospital personnel solely for medical purposes after a traffic accident. *State v. Hardy*, 963 S.W.2d 516, 527 (Tex. Crim. App. 1997). The *Hardy* rule applies in instances where the accused challenges the State's use of his or her medical records at trial due to an alleged HIPAA violation. *See Murray v. State*, 245 S.W.3d 37, 42 (Tex. App.—Austin 2007, pet. filed); *Tapp v. State*, 108 S.W.3d 459, 461-62 (Tex. App.—Houston 2003, pet. ref'd). Because Appellant has no constitutional or statutory reasonable expectation of privacy with respect to blood-alcohol test results obtained solely for medical purposes following an accident, he has no standing to complain that the State obtained his medical records in violation of HIPAA. *See Ramos v. State,* 124 S.W.3d 326, 338-39 (Tex. App.—Fort Worth 2003, pet. ref'd).
>
> We are mindful that "standard, requirement or implementation specification" adopted under the Privacy Rule generally preempts contrary state laws. *Murray*, 245 S.W.3d at 42 (citing 45 C.F.R. § 160.203). Nevertheless we are constrained to follow existing law under *Hardy* absent any guidance or instructions to the contrary from the Court of Criminal Appeals. *Id.; Tapp*, 108 S.W.3d at 463. That said, HIPAA requirements for disclosure conform with the holding in *Hardy* as follows:
>
> A covered health care provider providing emergency health care in response to a medical emergency . . . may disclose protected health care information to a law enforcement official if such disclosure appears necessary to alert law enforcement to: (A) The commission and nature of a crime; (B) The location of such crime or of the victim(s) of such crime;

9

and (C) The identity, description, and location of the perpetrator of such crime. 45 C.F.R. § 164.512(f)(6)(i).

*Kennemur,* 280 S.W.3d at 311-12.

That appellant's medical records in *Kennemur* were obtained by the State via a *subpoena duces tecum* as opposed to a grand jury subpoena is of no moment. *See Tapp*, 108 S.W.3d at 462-63 (injured motorist lacked standing to complain that his blood-alcohol test results were not obtained in compliance with the grand jury subpoena process when his blood was drawn by emergency medical personnel for medical purposes after a traffic accident). *Accord Garcia v. State,* 95 S.W.3d 522, 526-27 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Dickerson v. State*, 965 S.W.2d 30, 31 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd, improvidently granted), 986 S.W.2d 618 (Tex. Crim. App. 1999); *Hicks v. State*, No. 01-02-00165-CR, 2003 Tex. App. LEXIS 9280, at *6 (Tex. App.—Houston [1st Dist.] Oct. 20, 2003, no pet.) (mem. op., not designated for publication); *Harmon v. State*, No. 01-02-00035-CR, 2003 Tex. App. LEXIS 6172, at *6-7 (Tex. App.—Houston [1st Dist.] July 17, 2003, no pet.) (mem. op., not designated for publication). This is particularly so where, as here, the State obtained the medical records by a grand jury subpoena following a prior allegedly defective grand jury subpoena. *See Ramos,* 124 S.W.3d at 338-39 (finding appellant lacked standing to assert medical records were inadmissible because the State obtained the records by subpoena following a prior allegedly defective grand jury subpoena).

Thus, we hold that, because there is no expectation of privacy in one's blood-alcohol test results when the blood is obtained by hospital personnel after a traffic

10

accident for medical purposes, Appellee lacks standing to assert that using a grand jury subpoena to obtain his blood results constituted an unreasonable search and seizure.[8] Because Appellee lacked standing to challenge the process by which his medical records were obtained, the trial court erred by addressing the question. Issue one is sustained.

ISSUES TWO AND THREE—LEGALITY OF SEIZURE OF MEDICAL RECORDS

Even if we were to assume that Appellee had standing to challenge the process by which the first grand jury subpoena was issued, the trial court made no finding in its *Conclusions of Law* that the second grand jury subpoena was defective. Therefore, we must assume that the basis for the exclusion of Appellee's medical records was the State's failure to "demonstrate any attenuation of the taint" from the first subpoena.

By his motion to suppress, Appellee proffers two reasons why his medical records were illegally seized and should be suppressed: (1) the evidence was obtained in violation of his rights under HIPPA; and (2) the evidence was obtained through the use of a "sham" grand jury investigation.

The trial court's basis for finding the first grand jury subpoena defective was its conclusion that, because "no actual grand jury" was involved, the medical records were obtained in violation of HIPPA requirements because such records should only be

---

[8] Although, generally speaking, taking a blood sample is a search and seizure within the scope of the Fourth Amendment to the United States Constitution and article 1, section 9 of the Texas Constitution, *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Aliff v. State*, 627 S.W.2d 166, 169 (Tex. Crim. App. 1982), Fourth Amendment search and seizure principles are not implicated here because the blood extraction did not involve police conduct. *State v. Kelly*, 166 S.W.3d 905, 910 (Tex. App.—Corpus Christi 2005), *aff'd*, 204 S.W.3d 808 (Tex. Crim. App. 2006). Accordingly, the absence of a search warrant or a court order are not theories of law applicable to the case before us. *See id.* at 911.

released in response to a grand jury subpoena. In that regard, the trial court found that based on the "common and accepted practice" of the Lubbock County Criminal District Attorney's Office, grand jury subpoenas were regularly issued "independent of any grand jury or grand jury process" as a ruse to "illegally" obtain medical records under the guise of a grand jury investigation. In particular, the trial court condemned the practice of issuing a grand jury subpoena upon the application of an Assistant Criminal District Attorney rather than a grand jury member without reference to any pending investigation. While this practice may be the subject of another issue in another case, that practice is not the issue we must address in this case because the medical records produced in this case were produced in response to the second grand jury subpoena, which was itself issued upon the request of the foreman of the grand jury. We will not look beyond the issuance of the subpoena to determine whether the matter is a legitimate matter of consideration by the grand jury. Because disclosure of medical records under HIPAA is permissible without an individual's permission when the information is disclosed for law enforcement purposes and is obtained pursuant to a grand jury subpoena, the medical records in this case were not illegally obtained. *See* 45 C.F.R. § 164.512(f)(1)(ii)(B), (f)(6)(i) (2013).[9] This exception to HIPAA's Privacy Rule is not qualified according to whether the grand jury subpoena is the first grand jury subpoena or a subsequent such subpoena.

---

[9] Neither did Appellee prove a causal connection between the disclosure of his medical records by the hospital and any violation of a right to privacy at the hearing. *State v. Johnson,* 871 S.W.2d 744, 751 (Tex. Crim. App. 1994) ("The subsequent procurement of an arrest warrant was an intervening circumstance."). That said, the attenuation-of-taint doctrine is inapplicable here because Appellee has no standing to complain about the seizure of the evidence, i.e., no invasion of Appellee's right to privacy occurred when his medical records were seized from the hospital, a third party. *See Chavez v. State*, 9 S.W.3d 817, 819 (Tex. Crim. App. 2000) (citing *Fuller v. State*, 829 S.W.2d 191, 210-12 (Tex. Crim. App. 1992)).

The State further asserts it did not violate article 38.23 of the Texas Code of Criminal Procedure because the State's grand jury subpoenas were not defective and, even if the first subpoena was defective, the second was not. Because Appellee failed to establish any causal connection between issuance of the first and second subpoenas, and because the medical records in question were lawfully produced in response to the second subpoena, the trial court erred in finding the State did not comply with the requirements of HIPAA. Accordingly, the State's second and third issues are sustained.

ISSUE FOUR

By its fourth issue, the State asserts the trial court erroneously concluded Appellee's blood-alcohol test results were inadmissible because they were scientifically unreliable and irrelevant. We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Page v. State*, 213 S.W.3d 332, 337 (Tex. Crim. App. 2006). "Appellate courts will uphold a trial court's ruling on admissibility of evidence as long as the trial court's ruling was at least within the zone of reasonable disagreement." *Id. See Hernandez v. State*, 205 S.W.3d 555, 558 (Tex. App.—Amarillo 2006, pet. ref'd).

Here, the trial court abused its discretion by holding that Appellee's medical records were inadmissible. Suppression of evidence is the proper remedy when evidence is *illegally* obtained in violation of the defendant's rights. *Hall*, 303 S.W.3d at 342 n.9 (citing *Wade v. State*, 814 S.W.2d 763, 764 (Tex. App.—Waco 1991, no pet.)); *Reyes*, 361 S.W.3d at 230. As stated above, Appellee's medical records were legally

13

obtained. If Appellee's objection is to the admissibility of that evidence due to a lack of relevance or reliability, then the proper method of exclusion would be either a pretrial motion *in limine* or a trial objection when the evidence is offered. *Wade*, 814 S.W.2d at 764-65. *See State v. Robinson*, 334 S.W.3d 77, 782 (Tex. Crim. App. 2011).[10]

Furthermore, in *State v. Esparza,* 413 S.W.3d 81 (Tex. Crim. App. 2013), the Court of Criminal Appeals dealt with the issue of whether the granting of a motion to suppress could be justified on appeal on the basis of grounds that were not raised in the lower court. The *Esparza* Court held a trial court's finding that breath-alcohol test results were inadmissible due to their lack of scientific reliability "was not a 'theory of law applicable to the case' that [was] available to justify the trial court's otherwise erroneous ruling on the [defendant's] motion to suppress" because that issue was never joined at the trial court level. *Id.* at 86. Where the State was not put on notice that the admissibility of the breath-alcohol test results were being questioned on the basis of their scientific reliability, Rule 702 of the Texas Rules of Evidence was not a "theory of law applicable to the case." *Id.*

By finding the evidence inadmissible because the State failed to come forward with evidence of its reliability and relevancy in the context of a pretrial suppression proceeding, the trial court impermissibly shifted the burden of production and persuasion from Appellee to the State.[11] Appellee produced *no* evidence concerning

---

[10] "A motion in limine seeks to exclude objectionable matters from coming before the jury through a posed question, jury argument, or other means. *Wade,* 814 S.W.2d at 764. "In essence, a motion in limine's fundamental purpose is to obtain an order requiring an initial offer of objectionable evidence out of the jury's presence." *Id.* (citing M. Teague, B. Helft, 3 *Texas Criminal Practice Guide* § 73.02[2] (1990)).

[11] Even if we were to cast the suppression motion as a motion *in limine*, the result would be the

14

the scientific unreliability or irrelevancy of his blood-alcohol test.[12]  In *Robinson,* the

Criminal Court of Appeals stated as follows:

> Mr. Robinson contends that the State has the burden to show compliance with the state statute concerning the blood draw.  Indeed it does—at trial. As the proponent of the evidence at trial, the State must fulfill all required evidentiary predicates and foundations.  Thus, at trial, the State will be required to offer evidence that the blood was drawn by a qualified person before evidence of the blood, the blood test, and the blood test results are admissible.  Its burden at trial is to establish the admissibility of its evidence by a preponderance of the evidence.  *See* TEX. R. EVID. 104(a).
>
> At a motion to suppress evidence, however, it is the burden of the movant (the person who opposes use of the evidence) to establish that the evidence should not be admitted because of unlawful conduct.  *See State v. Kelly*, 204 S.W.3d 808, 819 & n.22 (Tex. Crim. App. 2006).  And Mr. Robinsion failed to satisfy both his burden of production and his burden of persuasion.

*Robinson,* 334 S.W.3d at 782.[13]  Thus, even if Appellee's evidentiary objections were

somehow cognizable in the suppression proceedings, Appellee failed to satisfy both his

burden of production and persuasion either by affidavit or oral testimony at the hearing.

Furthermore, Appellee reads too much into the statement by the Court of

Criminal Appeals in *Bigon v. State* regarding proof of intoxication by retrograde

_____

same.

[12] In addition, Appellee did not raise unreliability or irrelevancy as grounds for suppression in his original *DWI Motion To Suppress* or his *First Amended Motion to Suppress* filed March 14, 2011, or argue these grounds at the suppression hearing on January 25, 2012.  Further, there were no preliminary matters raised by either party seven days before the hearing or good cause motion subsequent to the hearing.  TEX. CODE CRIM. PROC. ANN. art. 28.01, § 2 (West 2006).  *See Taylor v. State,* 850 S.W.2d 294, 295-96 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (op. on reh'g).

[13] "It is possible that a blood sample taken by someone who is not qualified may be determined to be unreliable, but this is a question of admissibility to be raised at trial rather than a pre-trial suppression issue.  Therefore, article 38.23 does not apply in this case."  334 S.W.3d at 782 (Meyers, J., and Price, J., dissenting).  *See, e.g., Kennemur,* 280 S.W.3d at 309, 316-17 (blood serum test admissible at trial in the absence of any retrograde extrapolation analysis and despite that blood sample obtained seven hours after the accident).

extrapolation when it said, "research indicates that a blood test can be reliable if taken within two hours of driving." *Bigon v. State*, 252 S.W.3d 360, 368 (Tex. Crim. App. 2008). Nowhere in *Bigon* does the Court hold, as a matter of law, that a blood test taken more than two hours after driving is unreliable or irrelevant in a driving while intoxicated case. *See, e.g., Kennemur*, 280 S.W.3d at 309, 316-17 (blood serum test admissible at trial to show intoxication in the absence of testimony regarding retrograde extrapolation despite the fact that the blood sample was obtained seven hours after accident).

This is not an instance where the State seeks to use a blood test obtained hours after an accident that was *below* the legal limit of intoxication and, through retrograde extrapolation, attempts to show Appellee's blood-alcohol level exceeded the legal limit at the time of the accident. Rather, the State eschews a retrograde extrapolation analysis in favor of establishing an inference at trial that, because Appellee exceeded the legal limit of alcohol consumption hours after the accident with nothing to drink between the time of the accident and the blood test, a jury may reasonably infer Appellee was intoxicated at the time of the accident. *Kennemur,* 280 S.W.3d at 316 (appellant's blood-alcohol results taken hours after the accident are probative of appellant's intoxication even in the absence of any retrograde extrapolation because, under an impairment theory, the State need not prove appellant's exact blood alcohol content at the time of the accident). Accordingly, scientific unreliability or irrelevance was not a theory of law applicable to the case for purposes of excluding Appellee's medical records. The State's fourth issue is sustained.

## Conclusion

Because Appellee's medical records were not subject to exclusion under "any theory applicable to the case," the trial court's order granting Appellee's motion to suppress is reversed and the cause is remanded for proceedings in conformity with this opinion.

Patrick A. Pirtle
Justice

Do not publish.

Quinn, C.J. Concurring in the decision of the court and joining that portion of the opinion under which it is determined that Appellee lacked standing to contest the acquisition of the records.