

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00185-CR

Larry Leroy **MOORE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CR-1265
Honorable Maria Teresa (Tessa) Herr, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:        Irene Rios, Justice
                Liza A. Rodriguez, Justice
                Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: July 31, 2023

AFFIRMED

After a jury trial, Larry Leroy Moore was found guilty of capital murder and sentenced to imprisonment for life. In his first issue, he argues the trial court erred in compelling his spouse to testify against him. In his second and third issues, he complains the trial court erroneously defined "intentionally" and "knowingly" in the jury charge. We affirm.

---

[1]Sitting by assignment pursuant to section 74.003(b) of the Texas Government Code

## SPOUSAL PRIVILEGE

At a pretrial conference, the trial court heard argument and testimony relating to Moore's spouse Gretchen testifying. At the pretrial hearing, Gretchen invoked her spousal privilege. She testified she and Moore had been a couple for twenty years but had only recently married. A marriage certificate was later submitted showing that Moore and Gretchen married on March 12, 2022, about two weeks before trial began. It is undisputed that the State sought testimony from Gretchen related to events that occurred before the marriage.[2] The trial court ruled that spousal privilege did not prevent Gretchen from testifying about events before the marriage. At trial, Moore re-urged his objection and was granted a running objection by the trial court.

Gretchen testified that in an email to her son, she had referred to Moore having committed a crime a long time ago. About twenty years ago, Moore told her "about the situation where somebody—where a woman got killed . . . ." "It seems like something happened with—with a young woman that—that may have ended in her being killed."

On appeal, Moore argues the trial court erred in concluding spousal privilege did not apply to Gretchen's testimony because he argues that "the spousal testimonial privilege is not limited solely to confidential marital communications."[3] We review a trial court's decision to admit or exclude evidence for abuse of discretion. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996); *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on reh'g).

---

[2]Moore has not raised any issue on appeal relating to the trial court's failure to find a common-law marriage between Moore and Gretchen.

[3]We note that the State argues Moore lacks standing to raise his wife's testimonial privilege. While Rule 504(b)'s testimonial privilege may be invoked only by the spouse being called to testify, because Gretchen did invoke the privilege when called to testify as a witness for the State, Moore can complain on appeal about the trial court's ruling. *See Hernandez v. State*, 205 S.W.3d 555, 558 (Tex. App.—Amarillo 2006, pet. ref'd) (holding appellant had standing to complain about the trial court's overruling his objection to his wife being called as a witness for the prosecution because his wife invoked the testimonial privilege when called).

Generally, Texas Rule of Evidence 504 protects witnesses from being required to testify or provide evidence against their spouse. *See* TEX. R. EVID. 504. Rule 504 provides two separate privileges: a confidential communication privilege, which may apply in civil or criminal proceedings, and a privilege not to be called as a witness for the State, which applies only in criminal cases. *See id*. Both privileges, however, do not include communications made before the marriage. The confidential communication privilege found in subsection (a) states that "[a] person has a privilege to refuse to disclose and to prevent any other person from disclosing a *confidential communication made to the person's spouse while they were married*." *See id*. 504(a)(2) (emphasis added). Thus, Rule 504(a)'s confidential privilege does not include communications between spouses made before the marriage. *See id*. Similarly, the testimonial privilege found in subsection (b) does not include communications made before the marriage. Subsection (b)(1) provides that "[i]n a criminal case, an accused's spouse has a privilege not to be called to testify for the state." *Id*. 504(b)(1). However, subsection (b)(4) excepts from the testimonial privilege "matters that occurred before the marriage." *See id*. 504(b)(4) ("This privilege does not apply: . . . **(B) *Matters That Occurred Before the Marriage*. If the spouse is called to testify about matters that occurred before the marriage.").

Here, it is undisputed that Gretchen testified about a communication made from Moore to her before they were married. Both the testimonial privilege and the communication privilege found in Rule 504 do not encompass communications that occurred before the marriage. *See* TEX. R. EVID. 504; *Rodriguez v. State*, 546 S.W.3d 843, 861 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (explaining that Rule 504(a)'s confidential communication privilege applies to "communications made while the individuals were married" and survives the termination of the marriage); *Colburn v. State*, 966 S.W.2d 511, 515 (Tex. Crim. App. 1998) (explaining Rule 504(b)'s testimonial privilege "does not extend to matters occurring prior to the marriage" and for

testimonial privilege to apply "appellant had to prove that a common law marriage existed at the time of the events to which Martha testified"); *Kennedy v. State*, No. 02-07-008-CR, 2008 WL 2510607, at *3 (Tex. App.—Fort Worth June 19, 2008, pet. ref'd) (explaining that Rule 504(b)'s testimonial privilege "does not apply to matters occurring prior to marriage"). Given that it is undisputed that Gretchen testified about a communication between her and Moore before their marriage, we find no abuse of discretion by the trial court in overruling Moore's spousal privilege objection.

## JURY CHARGE

In his second and third issues, Moore complains the trial court erroneously defined "intentionally" and "knowingly" in the jury charge. Specifically, Moore argues that capital murder is a result-of-conduct offense and that the trial court erred in defining "intentionally" and "knowingly" with reference to nature of conduct and not solely as to result of conduct.

The indictment in this case alleged that Moore committed capital murder in two separate paragraphs:

**PARAGRAPH A**

on or about the 29th Day of January, 1987, LARRY MOORE, hereinafter referred to as defendant, did intentionally cause the death of an individual, namely, Dianna Lowery, hereinafter referred to as complainant, by IMPEDING THE NORMAL BREATHING OR THE CIRCULATION OF THE BLOOD OF THE COMPLAINANT, BY BLOCKING THE NOSE OR MOUTH OF THE COMPLAINANT, or BY APPLYING PRESSURE TO THE THROAT OR NECK OF THE COMPLAINANT, or BY MANNER AND MEANS TO THE GRAND JURY UNKNOWN, and the defendant was in the course of committing or attempting to commit the offense of AGGRAVATED SEXUAL ASSAULT of Dianna Lowery;

**PARAGRAPH B**

on or about the 29th Day of January, 1987, LARRY MOORE, hereinafter referred to as defendant, did intentionally cause the death of an individual, namely, Dianna Lowery, hereinafter referred to as complainant, by IMPEDING THE NORMAL BREATHING OR THE CIRCULATION OF THE BLOOD OF THE

COMPLAINANT, BY BLOCKING THE NOSE OR MOUTH OF THE COMPLAINANT, or BY APPLYING PRESSURE TO THE THROAT OR NECK OF THE COMPLAINANT, or BY MANNER AND MEANS TO THE GRAND JURY UNKNOWN, and the defendant was in the course of committing or attempting to commit the offense of KIDNAPPING of Dianna Lowery . . . .

The charge instructed the jury as follows:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Moore argues that by defining "intentionally" and "knowingly" with reference to nature of conduct, and not solely as to result of conduct, the trial court "lessened the prosecution's burden of proof." In response, the State points out that capital murder is not purely a result-oriented offense, as the prosecution must also prove an underlying offense, which in this case is aggravated sexual assault or kidnapping.

In considering a claim of jury charge error, we first determine whether any error exists and, if so, whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The degree of harm required to obtain a reversal depends on whether the error was preserved. *Id.*; *Dorch v. State*, 596 S.W.3d 871, 891 (Tex. App.—San Antonio 2019, pet. ref'd). Here, because Moore did not object to the complained of portion of the charge, he must prove he suffered "egregious harm." *Ngo*, 175 S.W.3d at 743-44; *Dorch*, 596 S.W.3d at 891.

In *Cook v. State*, 884 S.W.2d 485, 489 n.3 (Tex. Crim. App. 1994), the Texas Court of Criminal Appeals explained that "[w]hile capital murder is a 'result of conduct' offense, . . . in certain circumstances it is appropriate to instruct the jury on other 'conduct elements.'" "This is

because capital murder often requires a combination of 'conduct elements' to 'form the overall behavior which the Legislature has intended to criminalize.'" *Id*. (quoting *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989)). For example, section 19.03(a)(2) of the Texas Penal Code "requires not just the intent to cause the death of an individual but also requires the defendant to have the culpable mental state necessary to satisfy the 'conduct elements' of the underlying offense." *Id*. "Therefore, while [the court of criminal appeals] ha[s] said that capital murder is a result-of-conduct offense, . . . it is more accurate to view it as a result-of-conduct offense[,] which also includes nature of circumstances and/or nature of conduct elements depending upon the underlying conduct [that] elevates the intentional murder to capital murder." *Hughes v. State*, 897 S.W.2d 285, 295 (Tex. Crim. App. 1994).

Here, Moore was charged with capital murder pursuant to section 19.03(a)(2), and the underlying conduct alleged was aggravated sexual assault and kidnapping. As pointed out by the State, aggravated sexual assault is a nature-of-conduct offense. *See Metcalf v. State*, 597 S.W.3d 847, 857 (Tex. Crim. App. 2020) (explaining that aggravated sexual assault "is a nature-of-conduct offense"); *see also Gonzales v. State*, 304 S.W.3d 838, 847-79 (Tex. Crim. App. 2010); *Vick v. State*, 991 S.W.2d 830, 832-33 (Tex. Crim. App. 1999). Thus, the trial court did not err in defining "intentionally" and "knowingly" with reference to nature of conduct. *See Hughes*, 897 S.W.2d at 295 (recognizing "that in a capital murder case involving more than one conduct element[,] it would not be error for the definitions to include more than the result of conduct element").

## CONCLUSION

Having found no error on the part of the trial court, we affirm the judgment of the trial court.

Liza A. Rodriguez, Justice

Do not publish